# EXHIBIT 2

FILED: NEW YORK COUNTY CLERK 10/29/2013 INDEX NO. 653774/2013
NYSCEF DOC. NO. 11 RECEIVED NYSCEF: 10/29/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of<br><br>THE OFFICE OF THE COMMISSIONER OF BASEBALL,<br><br>Petitioner,<br><br>against<br><br>MICHAEL S. SITRICK,<br><br>Respondent.<br><br>For an Order Compelling Compliance with a Subpoena. | Index No. |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S ORDER TO SHOW CAUSE AND PETITION**

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ........................................ 1

STATEMENT OF FACTS ........................................ 1

Background ........................................ 1

The Role of Michael Sitrick and Sitrick & Company ........................................ 2

ARGUMENT ........................................ 4

I. SITRICK SHOULD BE COMPELLED TO COMPLY WITH THE SUBPOENA ............ 4

A. This Court Has the Authority to Compel Compliance with the Subpoena ............... 5

B. The Subpoena Was Properly Served ........................................ 5

C. The Documents and Testimony Sought Are Relevant to the Central Issues in the Arbitration ........................................ 7

D. Sitrick's Objections to the Subpoena Have No Merit ........................................ 8

CONCLUSION ........................................ 9

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Dias v. Consol. Edison Co. of N.Y., Inc.*,
116 A.D.2d 453, 496 N.Y.S.2d 686 (1st Dep't 1986) ....7

*Parkhouse v. Stringer*,
12 N.Y.3d 660, 884 N.Y.S.2d 216 (2009) ....7

**STATUTES**

N.Y. C.P.L.R. 308(2) ....4, 5

N.Y. C.P.L.R. 308(6) ....5

N.Y. C.P.L.R. 2301 ....7

N.Y. C.P.L.R. 2305 ....7

N.Y. C.P.L.R. 2308(b) ....5

N.Y. C.P.L.R. 2308(b)(1) ....4

N.Y. C.P.L.R. 3120 ....7

N.Y. C.P.L.R. 3122(d) ....6

N.Y. C.P.L.R. 7505 ....1, 5

N.Y. C.P.L.R. 8001 ....6

## PRELIMINARY STATEMENT

Petitioner, The Office of the Commissioner of Baseball, doing business as Major League Baseball ("MLB"), seeks an order compelling Respondent, Michael S. Sitrick to comply with a trial subpoena dated September 19, 2013 (the "Subpoena") that was issued by Arbitration Panel Chairman, Fredric R. Horowitz pursuant to N.Y. C.P.L.R. 7505 in connection with the pending arbitration between the Major League Baseball Players Association (Alex Rodriguez) and the Office of the Commissioner of Baseball, Grievance No. 2013-02 (the "Arbitration"). Despite being properly served with an enforceable subpoena, Mr. Sitrick has refused to appear at the hearing to give testimony or to produce documents.

## STATEMENT OF FACTS

***Background***

Pursuant to agreements that are the product of collective bargaining between MLB and the Major League Baseball Players' Association (the "Union") – the Joint Drug Prevention and Treatment Program (the "Joint Drug Agreement") and the Basic Agreement - Major League players are prohibited from possessing or using certain performance enhancing substances and from engaging in conduct that is materially detrimental or materially prejudicial to the best interests of Baseball. (Affirmation of Howard L. Ganz, dated October 29, 2013, hereinafter "Ganz Aff.", at ¶ 5.) Players who possess or use such prohibited substances and/or who engage in such conduct are subject to discipline by MLB. (Ganz Aff. at ¶ 5.)

On or about January 29, 2013, the *Miami New Times*, a Miami-area newspaper, published what it described as excerpts from handwritten records maintained by Anthony Bosch ("Bosch"), the proprietor of a now-defunct anti-aging clinic based in South Florida, last known as "Biogenesis." (Ganz Aff. at ¶ 4, Ex. 2.) The hand-written records as published by the *Miami New Times* identified several Major League players as having received from Bosch and/or the

clinics with which he was associated certain performance enhancing substances that are banned by the Joint Drug Agreement. (Ganz Aff. at ¶ 4, Ex. 2.) One of the players so identified was Alex Rodriguez ("Rodriguez") of the New York Yankees. (Ganz Aff. at ¶ 4, Ex. 2.)

On August 5, 2013, following an investigation, MLB disciplined Rodriguez, by suspending him (effective as of August 8, 2013) for the remainder of the 2013 season and for the entire 2014 season, based upon his continuous and prolonged possession and use of numerous prohibited performance enhancing substances, and for his attempting to cover up his violations of the Joint Drug Agreement and engaging in a course of conduct that was intended to obstruct and frustrate MLB's investigation into his and other players' violations of that Agreement. (Ganz Aff. at ¶ 6.) Pursuant to the Basic Agreement's grievance and arbitration procedure, the Union filed a grievance on behalf of Rodriguez; and the arbitration of that grievance is currently pending before Arbitrator Fredric R. Horowitz, Chairman of the Arbitration Panel. (Ganz Aff. at ¶ 6.)

In the course of its investigation, MLB uncovered evidence indicating that Rodriguez, or others acting on his behalf, had obtained certain records, which had been maintained by Bosch, doing so for the apparent purpose of preventing MLB from obtaining those records and from uncovering evidence of Rodriguez's use and possession of prohibited substances. (Ganz Aff. at ¶ 7.)

***The Role of Michael Sitrick and Sitrick & Company***

Respondent Michael S. Sitrick is the founder, Chairman and Chief Executive Officer of Sitrick & Company, a public relations firm with an office in New York County. (Ganz Aff. at ¶ 8, Ex. 3.) Upon information and belief, in or before January 2013, Sitrick & Company was retained to provide public relations services to Rodriguez. (Ganz Aff. at ¶ 9.) In fact, on or about January 29, 2013, the date of publication of the *Miami New Times* article referred to above, Sitrick & Company issued a statement on behalf of Rodriguez, asserting, *inter alia*, that

Rodriguez had never been treated or advised by Bosch and that the documents referenced in the *Miami New Times* article, at least as they related to Rodriguez, were not legitimate. (Ganz Aff. at ¶ 9, Ex. 4.)

On or about February 5, 2013, *Yahoo! Sports* published a story regarding Major League players who it claimed had received performance enhancing substances from Bosch—naming players (including Ryan Braun of the Milwaukee Brewers and Francisco Cervelli of the New York Yankees) who had *not* been identified in the *Miami New Times* article that had been published one week earlier. (Ganz Aff. at ¶ 10.) In addition, *Yahoo!* published excerpts of handwritten records said to have been maintained by Bosch that had *not* been published previously by the *Miami New Times* or any other publication. (Ganz Aff. at ¶ 10.)

MLB has a good faith basis to believe that the additional excerpts from Bosch's handwritten records that *Yahoo!* published on February 5, 2013 had been provided to Sitrick & Company by Rodriguez, or others acting on his behalf, and were then provided by Sitrick & Company to *Yahoo!*. (Ganz Aff. at ¶ 11.) Indeed, on August 16, 2013, the news program *60 Minutes*, citing two unnamed sources with direct knowledge of the matter, published a story on its website reporting that members of Rodriguez's inner circle had obtained and then leaked to *Yahoo!* the Bosch records implicating Braun and Cervelli. (Ganz Aff. at ¶ 11, Ex. 5.)

In connection with MLB's investigation of Rodriguez, MLB and the Union agreed that Rodriguez would provide MLB with any documents and information regarding or reflecting any efforts made by Rodriguez or others acting on his behalf to obtain records that had been maintained by Bosch, including but not limited to documents within the possession, custody or control of Sitrick & Company. (Ganz Aff. at ¶ 12.) Alternatively, the Union agreed that, if it was unable to produce such documents or information, it would provide MLB with a

certification from Sitrick & Company that Sitrick did not have and never had any such documents. (Ganz Aff. at ¶ 12.) When the Union advised MLB that it was unable to produce the documents in question, an agreed-upon form of certification (an affidavit) was sent to Michael Sitrick and Sitrick & Company for execution. (Ganz Aff. at ¶ 12, Ex. 6.)

To date, MLB has received neither responsive documents from Sitrick & Company, nor an affidavit from Mr. Sitrick certifying that neither he nor the Company has or ever had the documents in question. (Ganz Aff. at ¶ 13.)

Accordingly, on September 19, 2013, MLB served Mr. Sitrick with the Subpoena in compliance with C.P.L.R. 308(2) by delivering it on that date to an adult employee of Sitrick & Company at the firm's place of business in New York, along with a witness fee of $40 (forty dollars), and by mailing it to Mr. Sitrick at his place of business in the manner required by C.P.L.R. 308(2). (Ganz Aff. at ¶ 14, Ex. 1.) On September 27, 2013, counsel for Mr. Sitrick and Sitrick & Company, J. Michael Hennigan, sent counsel for MLB a letter objecting to the Subpoena and stating that Mr. Sitrick would not appear before the Arbitration Panel to testify or provide documents. (Ganz Aff. at ¶ 15, Ex. 7.)

MLB is seeking an order to compel compliance with the Subpoena because Mr. Sitrick's refusal to comply with the Subpoena has actually impeded MLB's ability to defend against the grievance by precluding MLB from obtaining information on matters relevant to its claims and defenses in the pending Arbitration.

## ARGUMENT

### I.

### SITRICK SHOULD BE COMPELLED TO COMPLY WITH THE SUBPOENA

**A. This Court Has the Authority to Compel Compliance with the Subpoena**

This Court has the authority to compel compliance with the subpoena pursuant to N.Y. C.P.L.R. 2308(b)(1), which provides that

> "... if a person fails to comply with a subpoena which is not returnable in a court, the issuer or the person on whose behalf the subpoena was issued may move in the supreme court to compel compliance. If the court finds that the subpoena was authorized, it shall order compliance and may impose costs not exceeding fifty dollars."

There can be no question that the Subpoena was authorized within the meaning of N.Y. C.P.L.R. 7505 clearly provides that "[a]n arbitrator... has the power to issue subpoenas." The Subpoena was issued by the Arbitration Panel Chairman, Fredric R. Horowitz on behalf of MLB, and, thus, was authorized within the meaning of the C.P.L.R.

Mr. Sitrick's claim that, as a California resident, he cannot be compelled to appear and testify at the Arbitration in New York is incorrect. This Court has the power to compel compliance with a properly served subpoena. If the Court issues an order compelling Mr. Sitrick to comply with the subpoena and he fails to do so, the Court can issue a warrant pursuant to N.Y. C.P.L.R. 2308(b), which would be enforceable against Mr. Sitrick when he enters New York to do business (for example, at the New York office of his company).

**B. The Subpoena Was Properly Served**

N.Y. C.P.L.R. 308(2) provides that personal service upon a natural person shall be made

> "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business... of the person to be served and by . . . mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential' and not indicating on the

> outside thereof...that the communication is from an attorney . . . ."

N.Y. C.P.L.R. 308(6) provides that an "actual place of business" shall include any location that the defendant, through regular solicitation or advertisement, has held out as its place of business.

Michael Sitrick is the founder, Chairman and Chief Executive Officer of Sitrick & Company. (Ganz Aff. Ex. 3.) Sitrick & Company is a public relations firm, which has offices in several cities. Its New York office is located at 7 Times Square, Suite 2600, New York, NY 10036. Mr. Sitrick advertises to the public on his company's website that the New York office is his place of business. Indeed, the "vcard" available for download from Mr. Sitrick's biographical page on the Sitrick & Company website lists the Seven Times Square address as one of his personal business addresses. Accordingly, there can be no question that Mr. Sitrick holds out the New York office of Sitrick & Company as his place of business.

As set forth in the Affidavit of Service (Ganz Aff. Ex. 1), the subpoena was hand delivered and the $40 witness fee was tendered at the New York office of Sitrick & Company to Rachel Warzola, an associate at Sitrick and Company, who confirmed that Mr. Sitrick did business at that location and accepted service on his behalf. The subpoena was also sent to Mr. Sitrick by certified mail as required by the C.P.L.R. (Ganz Aff. Ex. 1.) Thus, the subpoena was properly served.

Contrary to the claims in the letter from Sitrick's counsel, there was no payment required for travel expenses because the subpoena was properly served in the city of New York and the hearing is to take place within the city. *See* N.Y. C.P.L.R. 8001. Indeed, the hearing is only a few blocks from the offices of Sitrick & Company. Similarly, to the extent Respondent argues that the subpoena was faulty because he was not provided payment for the cost of

producing documents and his attorneys' fees, such arguments are unpersuasive. With respect to the costs associated with document production, N.Y. C.P.L.R. 3122(d) provides that the "reasonable production expenses of a non-party witness shall be defrayed by the party seeking discovery." Should Sitrick produce copies of the requested documents, MLB will defray those costs in compliance with the C.P.L.R.[1] There is, however, no requirement that production costs be defrayed in advance or that attorneys' fees be paid at all. Similarly, Respondent's objection based upon the failure to give twenty days of notice in accordance with C.P.L.R. 3120 is improper; that provision applies to a subpoena *duces tecum* served in the course of pre-trial discovery. The subpoena at issue is a trial subpoena for testimony and the production of documents at trial, pursuant to N.Y. C.P.L.R. 2301 and 2305; thus the notice period does not apply.

## C. The Documents and Testimony Sought Are Relevant to the Central Issues in the Arbitration

The documents and testimony requested are relevant and necessary for the fair arbitration of the grievance; the subpoena, therefore, must be enforced. *See Parkhouse v. Stringer*, 12 N.Y.3d 660, 884 N.Y.S.2d 216 (2009) (enforcing non-judicial subpoena for testimony); *Dias v. Consol. Edison Co. of N.Y., Inc.*, 116 A.D.2d 453, 496 N.Y.S.2d 686 (1st Dep't 1986) (enforcing nonjudicial subpoena where documents requested were relevant). A central issue in the Arbitration is whether Rodriguez or those acting on his behalf obstructed MLB's investigation into the use of performance enhancing drugs by players and into the dissemination of performance enhancing drugs to players by Anthony Bosch. MLB has a legitimate good faith belief that Rodriguez, or those acting on his behalf, obtained the Bosch

[1] Furthermore, to the extent responsive electronic documents are in a form that is not reasonably accessible, MLB is willing to discuss defraying the reasonable costs that might be incurred to access them as well. Accordingly, there is no basis for any objection on that ground.

documents in order to conceal them from MLB. MLB has attempted to obtain the requested documents from the Union. Despite previous representations that Rodriguez and the Union would produce the requested documents or an affidavit from Mr. Sitrick certifying that neither he nor Sitrick & Company have or ever had the Bosch documents, they have not done so. It is, therefore, critical that Mr. Sitrick be compelled to testify under oath as to whether he or Sitrick & Company has or ever had the Bosch documents and whether he or the Company provided those documents to *Yahoo! Sports* or other media outlets on Rodriguez's behalf. Furthermore, Mr. Sitrick should be compelled to testify as to his knowledge of any other efforts by Rodriguez or any of his agents or representatives to obtain documents or other evidence in an effort to frustrate or obstruct MLB's investigation.

**D. Sitrick's Objections to the Subpoena Have No Merit**

Contrary to the assertions in the letter of objection sent by Sitrick's counsel, there can be no claim of privilege as to communications between Sitrick and *third parties*, such as *Yahoo! Sports* and/or other media outlets.

Similarly Sitrick's objection on the basis that the requests seek confidential or proprietary information about Sitrick's other clients is unpersuasive. Any communications Sitrick had with third parties—namely, Rodriguez, his representatives, or the media—about *other* players could not possibly be confidential or proprietary.[2]

Respondent's objection on the grounds that the requests are overly broad and ambiguous is unpersuasive. First, the breadth of the document requests has no bearing upon Sitrick's obligation to appear to give testimony. Second, the first request is a focused request for

---

[2] To the extent that Respondent claims that Request No. 2 seeks communications with the media regarding his other baseball player clients about topics completely unrelated to the dissemination and use of performance enhancing substances or MLB's investigation into the use and dissemination of such substances by and to MLB players, MLB is willing to narrow the request to exclude such communications.

communications between Sitrick on the one hand and Rodriguez and those acting on his behalf on the other from October 1, 2012 to date relating to certain relevant topics and individuals. Third, the objection to the use of the term "relating to" is unreasonable. That phrase is regularly used by attorneys and the courts in discovery requests. Finally, Respondent's claim that it would be impossible for him to identify his communications with those acting on Rodriguez's behalf is disingenuous. Mr. Sitrick knows who communicated with him on behalf of Rodriguez, and MLB is simply seeking his communications with those individuals about the listed people and topics, which are directly relevant to the question of whether Rodriguez endeavored to obstruct MLB's investigation.

**CONCLUSION**

This Court should compel Sitrick to comply with the Subpoena, which was duly authorized and properly served and which seeks testimony and documents that are relevant and significant to the Arbitration.

Dated: October 29, 2013
New York, New York

PROSKAUER ROSE LLP

By: [signature]
Howard L. Ganz
Neil H. Abramson
Adam M. Lupion
11 Times Square
New York, NY 10036-8299
Tel. (212) 969-3000
Fax (212) 969-2900
hganz@proskauer.com
nabramson@proskauer.com
alupion@proskauer.com

*Attorneys for Petitioner*