**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE OFFICE OF THE COMMISSIONER
OF BASEBALL,

                   Petitioner,

                   v.

MICHAEL S. SITRICK,

                   Respondent.

Case No. 13 Civ. 7990 (ER) (ECF Case)

**ALEXANDER EMMANUEL RODRIGUEZ'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO INTERVENE, IN OPPOSITION TO VERIFIED PETITION, IN
OPPOSITION TO MOTION TO COMPEL, AND IN SUPPORT OF CROSS-MOTION
TO QUASH ARBITRATION SUBPOENA**

**Reed Smith LLP**
599 Lexington Avenue
New York, NY 10022
(212) 521-5400

-and-

**Gordon & Rees LLP**
3455 Peachtree Road, Suite 1500
Atlanta, GA 30326
Office: (404) 869-9054

**Tacopina Seigel & Turano, P.C.**
275 Madison Avenue
New York, NY 10016
(212) 227-8877

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 4

      A.    Based on a Newspaper Article, the Commissioner Steps Up His
           Investigation ............................................................................................ 4

      B.    Mr. Rodriguez Hires Counsel, Who Hires Sitrick & Co. ......................... 5

      C.    The Commissioner Improperly Suspends Mr. Rodriguez .......................... 6

      D.    The Commissioner Subpoenas Mr. Sitrick ................................................ 7

ARGUMENT ............................................................................................................... 8

   I.    MR. RODRIGUEZ SHOULD BE PERMITTED TO INTERVENE IN
       THIS ACTION PURSUANT TO FED. R. CIV. P. 24 ......................... 8

   II.   SITRICK & CO.'S COMMUNICATIONS WITH MR. RODRIGUEZ
       AND / OR HIS REPRESENTATIVES, INCLUDING BLACK
       SREBNICK, ARE PROTECTED BY THE ATTORNEY-CLIENT
       PRIVILEGE AND THE ATTORNEY WORK PRODUCT DOCTRINE .......... 10

      A.    The Attorney-Client Privilege Protects The Communications At
           Issue ....................................................................................................... 10

      B.    The Work Product Doctrine Also Protects The Communications At
           Issue ....................................................................................................... 14

   III.  THE COMMISSIONER'S SHOWING OF RELEVANCE IS
       INSUFFICIENT TO SUSTAIN A NON-PARTY SUBPOENA .......................... 17

CONCLUSION ........................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ....................................................................................19

*Blue Angel Films, Ltd. v. First Look Studios, Inc.*,
    No. 08 Civ. 6469, 2011 WL 830624 (S.D.N.Y Mar. 9, 2011) ....................................10

*Bodega Invs., LLC ex rel. Kriesberg v. United States*,
    No. 08 Civ. 4065, 2009 WL 1456642 (S.D.N.Y. May 14, 2009) ...........................13

*Cohen v. City of New York*,
    No. 05 Civ. 6780, 2010 WL 1837782 (S.D.N.Y. May 6, 2010) ...........................17

*Cole Mechanical Corp. v. National Grange Mut. Ins. Co.*,
    No. 06 Civ. 2875, 2007 WL 2593000 (S.D.N.Y. Sept. 7, 2007)..........................8

*Corcoran v. Peat, Marwick, Mitchell & Co.*,
    151 A.D.2d 443, 542 N.Y.S.2d 642 (1st Dep't 1989)...................................16

*Ernst Haas Studio, Inc. v. Palm Press, Inc.*,
    164 F.3d 110 (2d Cir. 1999) .........................................................................16

*Fears v. Wilhelmina Model Agency, Inc.*,
    No. 02 Civ. 4911, 2004 WL 719185 (S.D.N.Y. April 1, 2004) ............................17

*Fitzpatrick v. Am. Int'l Grp., Inc.*,
    No. 10 Civ. 142, 2011 WL 335672 (S.D.N.Y. Jan. 28, 2011) .....................10, 12, 15

*Fuller v. Interview, Inc.*,
    No. 07 Civ. 5728, 2009 WL 3241542 (S.D.N.Y. Sept. 30, 2009)...........................13

*GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*,
    No. 11 Civ. 1299, 2011 WL 6074275 (S.D.N.Y. Dec. 6, 2011) .............................15

*Granite Partners L.P. v. Bear, Stearns & Co.*,
    184 F.R.D. 49 (S.D.N.Y. 1999).....................................................................14

*Haber v. ASN 50th St., LLC*,
    272 F.R.D. 377 (S.D.N.Y. 2011) ..................................................................17

*Hallmark Cards, Inc. v. Murley*,
    No. 09 Civ. 377, 2010 WL 4608678 (S.D.N.Y. Nov. 9, 2010)...........................16

*In re Bieter Co.*,
    16 F.3d 929 (8th Cir. 1994) .........................................................................11

*In re Cardinal Health, Inc. Sec. Litig.*,
    No. C2 04 575, 2007 WL 495150 (S.D.N.Y Jan. 26, 2007) ..........................15, 16

*In re Copper Market Antitrust Litigation*,
  200 F.R.D. 213 (S.D.N.Y. 2001) ................................................................11, 13, 15

*In re Grand Jury Subpoena Dated March 24, 2003 Directed to (A) Grand Jury Witness Firm and (B) Grand Jury Witness*,
  265 F. Supp. 2d 321 (S.D.N.Y. 2003) ...................................................................passim

*In re Holocaust Victim Assets Litig.*,
  225 F.3d 191 (2d Cir. 2000) ................................................................................8

*Johnson v. Sea-Land Serv., Inc.*,
  No. 99 Civ. 9161, 2001 WL 897185 (S.D.N.Y. Aug. 9, 2001)...........................................10, 13

*Kingsway Fin. Servs., Inc. v. PriceWaterhouse-Coopers LLP*,
  No. 03 Civ. 5560, 2008 WL 4452134 (S.D.N.Y. Oct. 2, 2008)...........................................17

*Knipe v. Skinner*,
  999 F.2d 708 (2d Cir. 1993) ...............................................................................16

*Koch v. Greenberg*,
  No. 07 Civ. 9600, 2009 WL 2143634 (S.D.N.Y. July 14, 2009) ..............................................17

*Manley v. New York City Hous. Auth.*,
  190 A.D.2d 600, 593 N.Y.S.2d 808 (4th Dep't 1993) .............................................................18

*Minister, Elders & Deacons of the Reformed Protestant Dutch Church of the City of New York v. 198 Broadway, Inc.*,
  59 N.Y.2d 170, 451 N.E.2d 164 , 464 N.Y.S.2d 406 (1983) ......................................................19

*Ortiz v. Rivera*,
  193 A.D.2d 440, 597 N.Y.S.2d 326 (1st Dep't 1993).............................................................20

*Oxyn Telecomms., Inc. v. Onse Telecom*,
  No. 01 Civ. 1012, 2003 WL 660848 (S.D.N.Y. Feb. 27, 2003)..................................................12

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) ..............................................................................19

*Salvatore Studios Int'l v. Mako's Inc.*,
  No. 01 Civ. 4430, 2001 WL 913945 (S.D.N.Y. Aug. 14, 2001)...............................................17

*Solow v. Conseco, Inc.*,
  No. 06 Civ. 5988, 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008) ...............................................10

*United States v. Adlman*,
  134 F.3d 1194 (2d Cir. 1998) ...........................................................................14, 15

*United States v. Kovel*,
  296 F.2d 918 (2d Cir. 1961) ...............................................................................11

*United States v. Nobles*,
  422 U.S. 225 (1975) .......................................................................................14

*Upjohn Co v. United States*,
  449 U.S. 383 (1981) .......................................................................................11

*William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.,*
   262 F.R.D. 354 (S.D.N.Y. 2009) ................................................................14, 15, 16

*Winans v. Starbucks Corp.,*
   No. 08 Civ. 3734, 2010 WL 5249100 (S.D.N.Y. Dec. 15, 2010) ............................13

**Rules**

Fed. R. Civ. P. 24(a)(2) ...................................................................................8, 9

Fed. R. Civ. P. 24(b)(1)(B) ....................................................................................9

Fed. R. Civ. P. 26(b)(1) ...............................................................................16, 17

Fed. R. Civ. P. 26(b)(2)(C)(i), (iii) ........................................................................17

Fed. R. Civ. P. 26(b)(2)(C)(iii) .............................................................................20

Fed. R. Civ. P. 26(b)(3) ...............................................................................14, 15, 16

Fed. R. Civ. P. 26(b)(3)(A)(ii) ..............................................................................16

Fed. R. Civ. P. 26(c) .....................................................................................1, 8

Fed. R. Civ. P. 45 ........................................................................................8, 17

Fed. R. Civ. P. 45(c) .........................................................................................1

Intervenor and cross-movant Alexander Emmanuel Rodriguez ("Mr. Rodriguez"), by and through his undersigned attorneys, respectfully submits this memorandum of law: (1) in support of his motion to intervene in this action pursuant to Fed. R. Civ. P. 24; (2) in opposition to the Verified Petition filed on October 29, 2013 (the "Petition") by Petitioner The Office of the Commissioner of Baseball ("Petitioner" or the "Commissioner"), and removed to this Court on November 8, 2013 by Respondent Michael S. Sitrick ("Mr. Sitrick" or "Respondent"); (3) in opposition to the Commissioner's motion to compel filed on November 12, 2013 by order to show cause (the "Motion"); and (4) in support of Mr. Rodriguez's cross-motion (the "Cross-Motion") pursuant to Fed. R. Civ. P. 45(c) to quash the Arbitration Subpoena (the "Subpoena") issued on or about September 19, 2013, on behalf of the Commissioner to Mr. Sitrick, or in the alternative for a protective order limiting the Subpoena pursuant to Fed. R. Civ. P. 26(c).

## PRELIMINARY STATEMENT

The Subpoena represents but the latest chapter in the Commissioner's vindictive and well-documented campaign to destroy the public reputation of Mr. Rodriguez. This Subpoena is typical of the Commissioner's efforts: it runs roughshod over legal niceties, ignoring such basic concerns as attorney-client privilege, attorney work product and relevance. The Subpoena should be quashed for those fundamental reasons, among others.

For years, the Commissioner has been widely criticized for his failure to address appropriately the alleged widespread use of performance enhancing substances ("PES") in Major League Baseball ("MLB"). In or around January 2013, the *Miami New Times* published documents purportedly provided to it by a disgruntled former employee of Biogenesis of America, LLC ("Biogenesis"), a clinic in Coral Gables, Florida that allegedly supplied a number of professional ballplayers with banned PES, including, allegedly, Mr. Rodriguez. The

Commissioner, sensing an opportunity to vindicate his legacy by showing that he was, at long last, serious about PES, quickly resolved to "get" Mr. Rodriguez.

Aware of the Commissioner's personal disdain for him, Mr. Rodriguez initially retained Roy Black ("Mr. Black") of the law firm of Black, Srebnick, Kornspan & Stumpf, P.A. ("Black Srebnick") to assist in defending himself in connection with, among other things, any potential investigation by the Commissioner and any potential legal action that the Commissioner might initiate. Because defending Mr. Rodriguez would of necessity include a public relations component as part of his legal strategy, Black Srebnick in turn retained Mr. Sitrick's firm, Sitrick And Company ("Sitrick & Co.") – a well-known and well-respected public relations firm – to assist in that regard. Sitrick & Co. repeatedly consulted with Black Srebnick and Mr. Rodriguez on the public relations component of Mr. Rodriguez's legal strategy.

The Commissioner's campaign against Mr. Rodriguez – which included multiple false and damaging leaks to the media – culminated in an announcement on August 5, 2013 that MLB was suspending Mr. Rodriguez through the end of the 2014 season, for an unprecedented total of 211 games, four times the lengths of 13 other suspensions announced simultaneously, and the longest non-lifetime ban in baseball history. The next day, Mr. Rodriguez filed a grievance under the Basic Agreement between MLB and the Major League Baseball Players Association (the "Players Union"), and that grievance is currently being arbitrated (the "Arbitration").

In the context of the Arbitration, the Commissioner has continued his witch hunt against Mr. Rodriguez by issuing a subpoena to Mr. Sitrick. Sitrick & Co.'s responsibilities consisted of three parts: consulting with Mr. Rodriguez and Black Srebnick about Mr. Rodriguez's litigation strategy, communicating with the media when necessary to defend against the Commissioner's constant leaks of information, and ensuring accurate information was reported by the media

about Mr. Rodriguez.   The two requests in the Subpoena correspond to those two facets of Sitrick & Co.'s job.  Both requests, however, are improper.

The first request – for communications with Mr. Rodriguez and Black Srebnick concerning Sitrick & Co.'s consultations on litigation strategy – is improper as it seeks to violate the attorney-client privilege and the work product doctrine.   While it is unclear whether the Commissioner is still seeking these documents from Sitrick & Co., in any event communications with a client's representatives, including public relations agents, are privileged when they are made for the purpose of assisting with litigation strategy – which is precisely the case here.

The Commissioner appears primarily interested in the Subpoena's second request – seeking communications between Sitrick & Co. and the media.  However, that request seeks materials that are wholly irrelevant to the issues in the Arbitration.  What Sitrick & Co. might have said to inquisitive reporters bears no conceivable connection to whether Mr. Rodriguez used PES as charged in his suspension (which he did not), nor to whether Mr. Rodriguez somehow obstructed the Commissioner's investigation into PES usage as also alleged (which, again, he did not).  In fact, to the contrary, if (hypothetically) documents exist demonstrating that Sitrick & Co. released information to the press, such documentation could only prove that Mr. Rodriguez *did not* obstruct the Commissioner's investigation as such information would be disseminated by the press to the public where the Commissioner – or anyone else – would have access to the information.  For those two reasons, privilege and relevance, the two requests in the Subpoena should be quashed.

The Commissioner's real reason for issuing this Subpoena is, once again, to attempt to disparage Mr. Rodriguez publically by flinging accusations at him without proof.   The Commissioner has advanced the speculative theory that Mr. Rodriguez leaked to the media the

names of other MLB players who had been involved with Biogenesis in order to "obstruct" the Commissioner's investigation of the Biogenesis matter. Of course, even if MLB could somehow prove this theory, which it cannot, leaking the names of other players would only *highlight* the existence of the documents (as opposed to furthering the alleged goal to hide them from MLB), and undoubtedly would (as it apparently did) strengthen MLB's resolve to investigate the Biogenesis matter, both of which would be counter-productive to Mr. Rodriguez's supposed obstruction of MLB's investigation. Thus, the Petition all but admits that the Subpoena is a fishing expedition with no purpose other than to harass Mr. Rodriguez and anyone who deigns to affiliate with him. Needless to say, such is not a valid ground for issuing a subpoena.

Accordingly, for the reasons stated herein, the Petition and the Motion should be denied and the cross-motion to quash should be granted.

## STATEMENT OF FACTS

### A.     Based on a Newspaper Article, the Commissioner Steps Up His Investigation

For years, the Commissioner has been criticized for his failure to address appropriately the apparent widespread use of PES among MLB players. As just one prominent example, under pressure from fans and Congress, in 2006 the Commissioner appointed former Senator George J. Mitchell to investigate the use of PES by MLB players. Senator Mitchell's report, released in 2007, found rampant use of banned substances throughout the game, and singled out the Commissioner for criticism regarding his mishandling of PES usage in baseball. The report concluded that "it is clear that baseball missed the early warning signs of a growing crisis." *See* Declaration of Jordan W. Siev, dated Nov. 15, 2013, Exhibit C.[1]

---

[1] Unless otherwise noted, references herein to "Ex." are to exhibits to Mr. Siev's Declaration.

In or around January 2013, the *Miami New Times*, a free weekly tabloid, published documents allegedly provided to it by a disgruntled former Biogenesis employee. Exhibit 2 to Affirmation of Howard L. Ganz, dated Oct. 29, 2013 ("Ganz Aff."). The Commissioner, sensing an opportunity to burnish his own image by showing that he was tough on PES, quickly began investigating. While the Commissioner had undertaken an investigation previously, that investigation was moribund, and the *Miami New Times* article sparked the Commissioner to resume his efforts.

### B.    Mr. Rodriguez Hires Counsel, Who Hires Sitrick & Co.

To assist in defending himself in connection with, among other things, the Commissioner's investigation and any potential legal action that the Commissioner might initiate, Mr. Rodriguez initially retained as his counsel Mr. Black and the Black Srebnick law firm. *See* Declaration of Roy Black, dated Nov. 15, 2013 ("Mr. Black's Declaration" or "Black Decl."), at ¶ 5. Because of the intense public interest in the Commissioner's investigation, defending Mr. Rodriguez would of necessity include a public relations component as part of his legal strategy. *Id.* at ¶ 6. The necessity of a public relations aspect to Mr. Rodriguez's legal strategy increased as concerns were raised that the Commissioner's legal strategy was to attempt to prejudice the public and the potential fact-finders against Mr. Rodriguez through a consistent stream of leaks to the media related to every step of the investigation and discipline of Mr. Rodriguez. It appeared that one of the goals of these unsourced leaks was to taint Mr. Rodriguez's image publicly and thereby in the mind of an eventual finder of fact. *Id.* at ¶ 7.

In addition, because the Commissioner's investigation and disciplinary process were so highly publicized, the media would inevitably be seeking Mr. Rodriguez's comments in response. An expert in public relations would help Black Srebnick attempt to protect Mr.

Rodriguez so that his media relations would be consistent with his legal strategy and would not result in further exposure during those processes and in any subsequent litigation. *Id.* at ¶¶ 8-9. Accordingly, Black Srebnick needed the assistance of public relations professionals to consider how to mount a media-sensitive defense to a media-focused pre-litigation campaign. *Id.* For instance, Black Srebnick needed guidance on how the Commissioner's leaks would impact any investigation discipline, and subsequent litigation or arbitration, as well as whether certain media-sensitive steps would be necessary to defend against such a litigation strategy. *Id.*

Black Srebnick accordingly retained Sitrick & Co. to assist in that regard. *Id.* at ¶ 10. Throughout Black Srebnick's representation of Mr. Rodriguez, Sitrick & Co. repeatedly consulted with Black Srebnick and Mr. Rodriguez on the public relations component of Mr. Rodriguez's potential litigation strategy, including how best to respond to the Commissioner's incessant and malicious leaks and how to attempt to prevent Mr. Rodriguez's media relations from further disadvantaging him in any litigation. *Id.* at ¶ 11. To the extent necessary, Sitrick & Co. also communicated with media on behalf of Mr. Rodriguez and Black Srebnick. *Id.* at ¶ 12.

### C.     The Commissioner Improperly Suspends Mr. Rodriguez

The full extent of the Commissioner's longstanding campaign to destroy Mr. Rodriguez's reputation need not be detailed here.[2] Suffice it to say that the Commissioner strove to impose severe discipline on Mr. Rodriguez in order to demonstrate that the Commissioner had learned from the errors of his previous tolerance of steroid use and had now "gotten tough" on PES.

The Commissioner's campaign, which followed months of prejudicial leaks by MLB to

---

[2] These background facts are described in greater detail in the Complaint filed in New York State Supreme Court on October 3, 2013 in *Rodriguez v. Major League Baseball*, et al., Index No. 653436/2013, and removed to this Court on October 7, 2013, No. 13 Civ. 7097, at ¶¶ 32-79. *See* Ex. D.

the media, culminated in an announcement on August 5, 2013, that MLB was suspending Mr. Rodriguez through the end of the 2014 season, for a total of 211 games, four times the lengths of 13 other suspensions announced simultaneously and the longest non-lifetime ban in baseball history. The next day, Mr. Rodriguez filed a grievance under the Basic Agreement between MLB and the Players Union. That grievance is currently being arbitrated before Arbitration Panel Chairman Fredric R. Horowitz.

### D.     The Commissioner Subpoenas Mr. Sitrick

The Subpoena to Mr. Sitrick was issued in that Arbitration on behalf of the Commissioner on or about September 19, 2013. *See* Ex. A. The Subpoena seeks Mr. Sitrick's testimony at the Arbitration, as well as the production of two categories of documents: (a) communications between Sitrick & Co. and Mr. Rodriguez and anyone acting on his behalf, including Black Srebnick, and (b) communications between Sitrick & Co. and any media representatives, in both cases related to, among other things, Biogenesis, the *Miami New Times* article, the Commissioner's investigation into PES, and any other past or current MLB players or their representatives, including without limitation their attorneys, agents, assistances, consultants or employees. *Id.*

Mr. Sitrick objected to the Subpoena by letter dated September 27, 2013 from his counsel, McKool Smith Hennigan P.C. *See* Ex. B. As has been well documented in the press, the Arbitration proceeded for nearly two weeks after that time, yet the Commissioner sat on his hands and did not file the Petition until over a month later, on October 29, 2013. Mr. Sitrick removed the case to this Court on November 8, 2013. (ECF Docket #1.) Then, on November 12, 2013, the Commissioner sought and obtained an Order to Show Cause setting this matter for a hearing on November 19, 2013. (ECF Docket #6.) By this opposition and cross-motion, Mr.

Rodriguez moves to intervene as of right, opposes the Petition and the Motion, and cross-moves this Court to quash the Subpoena pursuant to Fed. R. Civ. P. 45 and/or for a protective order pursuant to Fed. R. Civ. P. 26(c).

## ARGUMENT

### I.    MR. RODRIGUEZ SHOULD BE PERMITTED TO INTERVENE IN THIS ACTION PURSUANT TO FED. R. CIV. P. 24

Federal Rule of Civil Procedure 24(a)(2) provides "the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Second Circuit has viewed Rule 24(a)(2) as a four-part test, allowing intervention as of right to a party that meets the following criteria: "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197 (2d Cir. 2000); *see also, e.g., Cole Mechanical Corp. v. National Grange Mut. Ins. Co.*, No. 06 Civ. 2875, 2007 WL 2593000, at *2 (S.D.N.Y. Sept. 7, 2007) (following *Holocaust Victim Assets Litig.*).

Mr. Rodriguez unquestionably meets this test. First, he is moving timely; this motion is being filed merely one week after the action was removed to this Court, and consistent with the Court's schedule issued by Order to Show Cause on November 12, 2013. Indeed, counsel for Mr. Rodriguez appeared and argued on the record at the time counsel for the Commissioner presented the Order to Show Cause, which was on the first business day after this action was removed to the Court.

Second and third, Mr. Rodriguez has a significant interest in the motions before this Court, which may well be impaired by their disposition. Although the Subpoena was not directed at Mr. Rodriguez, it is indisputable that he would be affected by it were this Court to grant the Petition and the Motion. The Subpoena was issued in the Arbitration, to which Mr. Rodriguez is a party, and it seeks testimony and documents for use against Mr. Rodriguez in that Arbitration. Further, if the Commissioner ever leaks to the media the substance of the subpoenaed communications (which would be consistent with the Commissioner's prior behavior, *see* Ex. D at ¶¶ 57-61), it will represent a further breach of the confidentiality protections of the grievance process, which would be a detriment to the integrity of the process, Mr. Rodriguez, and all other MLB players who specifically bargained for and rely upon the confidentiality of the grievance process. Mr. Rodriguez's interest in the outcome of the Commissioner's Petition and Motion cannot be overstated.

Finally, Mr. Rodriguez's interest cannot be adequately protected by any other party to this litigation. Indeed, the privilege invoked by the requests in the Subpoena belongs to Mr. Rodriguez, and may not be waived or impaired by any other party. It is thus up to him to appear and protect his privileges.

Accordingly, Mr. Rodriguez has met his burden under Rule 24(a)(2) and should be permitted to intervene in this action as of right. In the alternative, however, Mr. Rodriguez should be permitted to intervene pursuant to Rule 24(b)(1)(B), which provides that the Court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Mr. Rodriguez shares a common question of law with both Mr. Sitrick *and* the Commissioner: whether the Subpoena is legally valid and enforceable, or

whether it should be quashed.  As such, Mr. Rodriguez should be permitted to intervene in this action under either provision of Rule 24.[3]

## II.   SITRICK & CO.'S COMMUNICATIONS WITH MR. RODRIGUEZ AND / OR HIS REPRESENTATIVES, INCLUDING BLACK SREBNICK, ARE PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE AND THE ATTORNEY WORK PRODUCT DOCTRINE

### A.   The Attorney-Client Privilege Protects The Communications At Issue

The attorney-client privilege protects "communications among clients, their attorneys, and the agents of both, for the purpose of seeking and rendering an opinion on law or legal services, or assistance in some legal proceeding, so long as the communications were intended to be, and were in fact, kept confidential." *Johnson v. Sea-Land Serv., Inc.*, No. 99 Civ. 9161, 2001 WL 897185, at *2 (S.D.N.Y. Aug. 9, 2001) (collecting cases); *see also, e.g., Fitzpatrick v. Am. Int'l Grp., Inc.*, No. 10 Civ. 142, 2011 WL 335672, at *2 (S.D.N.Y. Jan. 28, 2011) ("The privilege also extends to communications between the attorney and others who are hired by the lawyer to provide professional services that assist the attorney in rendering legal advice to his client.").

Courts in New York have held that the attorney-client privilege can extend to cover communications with public relations firms.  In *In re Grand Jury Subpoena Dated March 24, 2003 Directed to (A) Grand Jury Witness Firm and (B) Grand Jury Witness*, 265 F. Supp. 2d 321 (S.D.N.Y. 2003), the Court reasoned that "attorney efforts to influence public opinion in order to advance the client's legal position . . . are services," *id.* at 326, and "the ability of lawyers to

---

[3] Even if this Court finds that Mr. Rodriguez should not be permitted to intervene, "it is well-established that a party with a real interest in the documents has standing to raise objections to their production." *Solow v. Conseco, Inc.*, No. 06 Civ. 5988, 2008 WL 190340, at *3 (S.D.N.Y. Jan. 18, 2008); *see also Blue Angel Films, Ltd. v. First Look Studios, Inc.*, No. 08 Civ. 6469, 2011 WL 830624, at *1 (S.D.N.Y Mar. 9, 2011) (following *Solow*).  Accordingly, the remainder of Mr. Rodriguez's arguments below should be considered on their merits.

perform some of their most fundamental client functions . . . would be undermined seriously if lawyers were not able to engage in frank discussions of facts and strategies with the lawyers' public relations consultants." *Id.* at 330.   The Court thus held that "(1) confidential communications (2) between lawyers and public relations consultants (3) hired by the lawyers to assist them in dealing with the media in cases such as this (4) that are made for the purpose of giving or receiving advice (5) directed at handling the client's legal problems are protected by the attorney-client privilege." *Id.* at 331.   *Grand Jury Subpoena* followed the line of *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) and *Upjohn Co v. United States*, 449 U.S. 383 (1981).

   *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213 (S.D.N.Y. 2001), reached a similar conclusion, also in connection with a subpoena issued to a defendant's public relations firm.   The *Copper Market* Court held that "because the [public relations] consultant was involved in the activities which were the subject matter of the ensuing litigation and because the consultant possessed the information required by the attorney for informed advice, the consultant's confidential communications to counsel were protected." *Id.* at 218 (following *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994)).   The Court concluded, moreover, that "there is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice." *Id.* at 219.

   The set of documents described by *Grand Jury Subpoena* and *Copper Market* is conceptually equivalent to the set of documents sought by the first request in the Subpoena here. That request seeks documents exchanged between Sitrick & Co. and:

> Alex Rodriguez and/or persons or entities acting on his behalf (including but not limited to Black, Srebnick, Kornspan & Stumpf, P.A.) . . . relating to any Players

(not including Rodriguez), Anthony Bosch, Biogenesis, Biokem, Porter Fischer, Yuri Sucart, articles appearing in the Miami New Times and/or Major League Baseball's investigation into the distribution of Performance Enhancing Substances.

Ex. A at 4.

On its face, this request seeks communications between Mr. Sitrick and Mr. Rodriguez's attorneys at Black Srebnick. As Mr. Black sets forth in his declaration, his firm retained Sitrick & Co. to assist them in dealing with the media, and communications between those two firms regarding Mr. Rodriguez were made for the purpose of giving or receiving advice directed at handling legal issues. Black Decl. at ¶¶ 6-11; *see also Grand Jury Subpoena*, 265 F. Supp. 2d at 331 (prongs (3), (4), and (5)). This advice was critical for Black Srebnick's legal defense of Mr. Rodriguez; Black Srebnick needed the guidance of media experts to understand, among other things, how to craft a litigation strategy that took into account the media-focused pre-litigation strategy employed by the Commissioner, and how to make sure Mr. Rodriguez's public statements were consistent with his legal strategy and would not result in further exposure to him in any litigation. Black Decl. at ¶¶ 6-11. Moreover, Mr. Black's Declaration further sets forth that these communications were intended to be, and were in fact kept, confidential. Black Decl. at ¶¶ 13-16; *see also Grand Jury Subpoena*, 265 F. Supp. 2d at 331 (prong (1)).

Moreover, a communication may be privileged if it relates to legal advice even if the client does not participate in the communications. *See, e.g., Oxyn Telecomms., Inc. v. Onse Telecom*, No. 01 Civ. 1012, 2003 WL 660848, at *4 n.3 (S.D.N.Y. Feb. 27, 2003) (communications between agent and attorney, even when client is not present, are privileged so long as the communications are directly related to legal counsel and the relationship between attorney and the client); *see also Fitzpatrick*, 2011 WL 335672, at *2-3 (finding protection for "[s]uch other professionals whose work may be treated, for privilege purposes, as an extension of

- 12 -

the attorney and whose relationship with the lawyer may come within the scope of the privilege"); *Bodega Invs., LLC ex rel. Kriesberg v. United States*, No. 08 Civ. 4065, 2009 WL 1456642, at *4-5 (S.D.N.Y. May 14, 2009) (finding communications between attorneys and client's representative to retain privilege where communications were confidential and made in connection with the provision of legal advice). Thus, communications regarding legal advice between Sitrick & Co. and Black Srebnick would be privileged even if Mr. Rodriguez was not included in such communications.

By the same token, confidential communications which discuss legal advice but do not include an attorney's participation may also be privileged. *See, e.g.*, *Johnson*, 2001 WL 897185, at *2. Accordingly, direct communications between Sitrick & Co. and Mr. Rodriguez which related to Black Srebnick's legal advice would be privileged even if Black Srebnick was not included.

As Mr. Black's Declaration sets forth, and as Mr. Rodriguez anticipates will be corroborated by Mr. Sitrick's own papers in opposition to the Petition, all of the communications which would be responsive to the Subpoena's first request are protected by the attorney-client privilege as described above. They were all confidential communications with Mr. Rodriguez, Black Srebnick, or both, regarding how public relations efforts could impact Mr. Rodriguez's legal defense efforts. *See* Black Decl. at ¶ 13-16. In such situations, courts have not hesitated to sustain attorney-client privilege objections to non-party subpoenas. *See Grand Jury Subpoena*, 265 F. Supp. 2d at 332; *Copper Mkt.*, 200 F.R.D. at 219-20; *see also Winans v. Starbucks Corp.*, No. 08 Civ. 3734, 2010 WL 5249100, at *3 (S.D.N.Y. Dec. 15, 2010) (denying motion to compel on grounds of attorney-client privilege); *Fuller v. Interview, Inc.*, No. 07 Civ. 5728, 2009 WL 3241542, at *3 (S.D.N.Y. Sept. 30, 2009) (granting motion for protective order on grounds

of attorney-client privilege).  It would be a fundamental violation of the attorney-client privilege

to require disclosure of such privileged communications here.

### B.     The Work Product Doctrine Also Protects The Communications At Issue

In addition to the attorney-client privilege, these communications are also squarely

protected as work product materials prepared in anticipation of litigation.  Federal Rule of Civil

Procedure 26(b)(3) provides that "a party may not discover documents and tangible things that

are prepared in anticipation of litigation or for trial by or for another party or its representative

(including the other party's attorney, consultant . . . or agent)."  Courts have explained that "in

order for work product protection to apply," the communication in question "must (1) be a

document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was

prepared by or for a party, or by or for his representative."  *William A. Gross Constr. Assocs.,*

*Inc. v. Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354, 359 (S.D.N.Y. 2009).  Appellate courts have

repeatedly "reaffirmed the 'strong public policy' underlying the work-product privilege."  *United*

*States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998) (quoting *United States v. Nobles*, 422 U.S.

225, 236 (1975)).

Notably, work product immunity protects materials prepared not only by attorneys, but

by any agent of the person who is threatened with litigation.  *See* Fed. R. Civ. P. 26(b)(3).

("including the other party's attorney, consultant . . . or agent"); *William A. Gross*, 262 F.R.D. at

359 ("The doctrine extends to notes, memoranda . . . and other materials, whether they are

created by an attorney or by an agent for the attorney." (quoting *Granite Partners L.P. v. Bear,*

*Stearns & Co.*, 184 F.R.D. 49, 52 (S.D.N.Y. 1999))).  Thus, the key question is whether "the

document can fairly be said to have been prepared or obtained *because of* the prospect of

litigation," *Adlman*, 134 F.3d at 1202, or "would not have been prepared in substantially similar

form but for the prospect of that litigation." *Id.* at 1195; *see also*, *e.g.*, *Fitzpatrick*, 2011 WL 335672, at *2-3 (finding work product protection covered agent's documents); *In re Cardinal Health, Inc. Sec. Litig.*, No. C2 04 575, 2007 WL 495150, at *6-7 (S.D.N.Y Jan. 26, 2007) (affording protection to documents prepared by attorney's agent).    Critically, "a document prepared because of litigation does not lose its work-product protection merely because it may be used to assist in business decisions." *GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, No. 11 Civ. 1299, 2011 WL 6074275, at *3 (S.D.N.Y. Dec. 6, 2011) (following *Adlman*).

The documents reflecting work performed by Sitrick & Co. on behalf of Mr. Rodriguez plainly meet these tests.  They are (1) documents, (2) prepared in anticipation of litigation, (3) by Mr. Rodriguez's representatives, Black Srebnick and/or Sitrick & Co.   *See* Fed. R. Civ. P. 26(b)(3); *William A. Gross*, 262 F.R.D. at 359.  As Mr. Black's Declaration describes, his firm retained Sitrick & Co. specifically in connection with the Commissioner's investigation into Mr. Rodriguez in January 2013, and for the purpose of assisting with Mr. Rodriguez's pre-litigation strategy.  Black. Decl. at ¶¶ 6-10.  Communications among Sitrick & Co., Mr. Rodriguez, and Black Srebnick were all conducted with an eye towards defending Mr. Rodriguez against any discipline, litigation, or other legal action the Commissioner might take against him.  *Id.* at ¶ 11.  Likewise, communications that Sitrick & Co. had with the media were undertaken with the same considerations in mind.  *Id.* at ¶ 12.  Indeed, both *Grand Jury Subpoena* and *Copper Market* found that documents prepared by or sent to public relations firms were protected by the work product doctrine as well as the attorney-client privilege.  *See Grand Jury Subpoena*, 265 F. Supp. 2d at 333-34, *Copper Market*, 200 F.R.D. at 221.  "[T]he limitations upon [Sitrick & Co.'s communications] necessitated by the knowledge that they might be subject to disclosure would have had an extremely detrimental effect on the ability to prepare an effective and informed

defense on behalf of his clients.   It is precisely to protect the integrity and vitality of the adversarial system that the attorney-client and attorney's work product privileges have been adopted." *Corcoran v. Peat, Marwick, Mitchell & Co.*, 151 A.D.2d 443, 445, 542 N.Y.S.2d 642 (1st Dep't 1989).   Accordingly, Sitrick & Co.'s communications on behalf of Mr. Rodriguez were covered by the work product immunity.

As Rule 26(b)(3) provides, the immunity it affords can be overcome if the documents are relevant under Rule 26(b)(1) and the party seeking discovery "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."   Fed. R. Civ. P. 26(b)(3)(A)(ii).   The Commissioner has the burden of proof on such a showing, *see id.*, *Hallmark Cards, Inc. v. Murley*, No. 09 Civ. 377, 2010 WL 4608678, at *6 (S.D.N.Y. Nov. 9, 2010), but he has not even attempted to make a showing at all. Were he to do so, he would fall short since, as described in Point III below, he does not have any "substantial need" for the materials in question because they are irrelevant.[4]

In the absence of any showing whatsoever, the Commissioner certainly cannot overcome the protection provided by Rule 26(b)(3) for materials prepared in anticipation of litigation. *See*, *e.g.*, *William A. Gross*, 262 F.R.D. at 365, *Cardinal Health*, 2007 WL 495150, at *7. Accordingly, the Subpoena should be quashed and/or a protective order entered, and the Petition and the Motion should be denied.

---

[4] Any attempt by the Commissioner to remedy this defect on reply or at the hearing scheduled for November 19, 2013 would be wholly improper and should be rejected. *See Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999) ("new arguments may not be made in a reply brief" (citing *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993))).

**III.   THE COMMISSIONER'S SHOWING OF RELEVANCE IS INSUFFICIENT TO SUSTAIN A NON-PARTY SUBPOENA**.

"Where a party has subpoenaed a non-party, the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011) (internal quotation marks and citations omitted). "Subpoenas issued under Rule 45 are subject to Rule 26(b)(1)'s overriding relevance requirement." *Koch v. Greenberg*, No. 07 Civ. 9600, 2009 WL 2143634, at *2 (S.D.N.Y. July 14, 2009). "'Rule 26(b)(1) of the Federal Rules of Civil Procedure restricts discovery to matters relevant to the claims and defenses of the parties.' . . . [D]iscovery is not boundless, and a court may place limits on discovery demands that are 'unreasonably cumulative or duplicative,' or in cases 'where the burden or expense of the proposed discovery outweighs its likely benefit.'" *Kingsway Fin. Servs., Inc. v. PriceWaterhouse-Coopers LLP*, No. 03 Civ. 5560, 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008) (quoting *Salvatore Studios Int'l v. Mako's Inc.*, No. 01 Civ. 4430, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001), and Fed. R. Civ. P. 26(b)(2)(C)(i), (iii)).

These concerns are heightened in the context of a subpoena issued on a non-party. "[T]he Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on a nonparty." *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911, 2004 WL 719185, at *1 (S.D.N.Y. April 1, 2004); *Cohen v. City of New York*, No. 05 Civ. 6780, 2010 WL 1837782, at *3 (S.D.N.Y. May 6, 2010) (quoting *Fears*). "The determination of whether a subpoena is unduly burdensome turns, in part, on why the requested material is relevant." *Kingsway*, 2008 WL 4452134, at *4.   A close review of relevance is particularly important here because this subpoena seeks to intrude on a relationship between a trusted advisor and his client.   Even apart from whether the communications are

attorney-client privileged or work product, a compelled response indisputably impairs the advisor-advisee relationship by forcing the advisor to produce evidence which might be used against his own client in a legal proceeding.   As such, in addition to careful review of the privilege and work-product issues, there must be a meaningful showing of relevance and necessity.

The Commissioner's argument in support of his motion to compel is threadbare at best. In a single, perfunctory paragraph, the Commissioner argues solely that: (1) he believes that Mr. Rodriguez obtained certain documents related to Biogenesis "in order to conceal them from MLB"; (2) evidence of such purported conduct would support the Commissioner's obstruction claim; and (3) whether Sitrick & Co. ever had such documents in its possession "or provided those documents to *Yahoo! Sports* or other media outlets on Rodriguez's behalf" would constitute such supportive evidence.   Mem. of Law in Support of Petitioner's Order to Show Cause and Petition, Oct. 29, 2013 ("Petitioner's Brief" or "Pet. Br."), at 8.

The Commissioner's logic is as flawed as it is cursory.

The Commissioner's relevance argument is fundamentally unsound for several reasons, beginning with the fact that his argument appears to be based entirely on assertions that appeared on the website of "the news program *60 Minutes*, citing two unnamed sources with direct knowledge of the matter." Pet. Br. at 3 (citing Ganz Aff. at ¶ 11).   In fact, the Commissioner has cited no other basis for his purported "legitimate good faith belief" that Mr. Rodriguez leaked the documents. *Id.* at 7.   If that is indeed the Commissioner's sole basis for his belief, it is not only a classic case of double hearsay – the website of a television news show quoting anonymous sources – but a classic case of "hypothetical speculations calculated to justify a fishing expedition." *Manley v. New York City Hous. Auth.*, 190 A.D.2d 600, 601, 593 N.Y.S.2d 808,

809 (4th Dep't 1993) (quoting *Minister, Elders & Deacons of the Reformed Protestant Dutch Church of the City of New York v. 198 Broadway, Inc.*, 59 N.Y.2d 170, 175, 451 N.E.2d 164, 166, 464 N.Y.S.2d 406 (1983)).  Such rank speculation is insufficient to sustain a motion to compel, particularly of a non-party.

The Commissioner states that "[i]n the course of its investigation, MLB uncovered evidence indicating that [Mr.] Rodriguez, or others acting on his behalf, had obtained" the Biogenesis documents, Petition at ¶ 10, Ganz Aff. at ¶ 7, but the "evidence" to which the Commissioner refers is never identified or put before the Court.  Similarly, the Commissioner states that "[u]pon information and belief," certain of the Biogenesis documents were provided by Mr. Rodriguez to Sitrick & Co., and by Sitrick & Co. to *Yahoo! Sports*, Petition at ¶ 17, Ganz Aff. at ¶ 11, but again, the source of the Commissioner's "information and belief" is not in the record.  The Commissioner, in effect, is attempting to pass off its smear campaign as fact, and in the absence of any other actual facts, the Commissioner's "information and belief" is the equivalent of "speculation and conjecture."  That is insufficient to sustain the Petition.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007))); *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) ("Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." (citation omitted)).

The Commissioner's relevance argument also makes little sense when considered in light of the conduct of which the Commissioner accuses Mr. Rodriguez.  If, hypothetically, Mr. Rodriguez had indeed obtained the Biogenesis documents "in order to conceal them from MLB,"

as the Commissioner alleges, then sharing those documents with the media would have been counterproductive to such an effort. Indeed, if Mr. Rodriguez had in fact acted with the intent of obstructing the Commissioner's investigation, then the logical thing to do would have been to keep quiet, not to share the documents with the media, and thereby with the Commissioner and with the world. Accordingly, any evidence of communications between Sitrick & Co. and the media would *not* support the Commissioner's allegations of obstruction, but would in fact tend to *undermine* them. This highlights that the Commissioner's "relevance" theory is untenable.

The scope of the Subpoena, paired with the Commissioner's inability to set forth any facts or provide a cogent, well-grounded rationale for its relevance, demonstrates the Commissioner is in fact seeking these documents for an entirely different, and wholly improper, reason: to use them as part of his continued campaign to attempt to embarrass Mr. Rodriguez and tarnish him in the court of public opinion. Using a Subpoena as such a tool is fundamentally inappropriate, as is using a Subpoena to pursue a "collateral issue . . . not relevant, necessary or material to the litigation." *Ortiz v. Rivera*, 193 A.D.2d 440, 441, 597 N.Y.S.2d 326 (1st Dep't 1993).[5]

For all these reasons, the subpoenaed information is irrelevant to the conduct of the Arbitration. Even if the Commissioner could muster some minimal showing of relevance, however, such a showing would not meet the balancing test of Federal Rule of Civil Procedure 26(b)(2)(C)(iii), under which "the court must limit the . . . extent of discovery" where "the burden or expense of the proposed discovery outweighs its likely benefit." Accordingly, for the

---

[5] To the extent the Commissioner may argue that he is seeking information which will help him determine whether Mr. Rodriguez leaked documents in violation of the confidentiality rules governing the Arbitration proceeding, the Commissioner failed to allege such a violation as a basis for the discipline he imposed on Mr. Rodriguez, and it would therefore be, again, entirely irrelevant to the claims that are the subject of the Arbitration.

reasons described above, the Subpoena should be quashed and/or a protective order granted, and the Petition and the Motion should be denied.[6]

## CONCLUSION

For the reasons set forth above, Mr. Rodriguez respectfully requests that this Court: (1) grant his motion to intervene; (2) deny the Commissioner's Petition and the Motion; (3) grant Mr. Rodriguez's Cross-Motion, quash the Subpoena and/or grant a protective order; and (4) grant such other and further relief as this Court deems just and proper.

Date:   New York, New York
        November 15, 2013

REED SMITH LLP

By: _____
    Jordan W. Siev, Esq.
    James C. McCarroll, Esq.
    Casey D. Laffey, Esq.
    599 Lexington Avenue
    New York, New York 10022
    Tel: (212) 521-5400
    Fax: (212) 521-5450

    TACOPINA SEIGEL & TURANO, P.C.
    Joseph Tacopina, Esq.
    275 Madison Avenue
    New York, New York 10016
    Tel: (212) 227-8877

    GORDON & REES LLP
    Wm. David Cornwell, Sr., Esq.
    3455 Peachtree Road, Suite 1500
    Atlanta, Georgia 30326
    Tel: (404) 869-9054

    *Attorneys for Cross-Movant*
    *Alexander Emmanuel Rodriguez*

---

[6] Mr. Rodriguez is informed that Mr. Sitrick will also be opposing the Subpoena and the Petition and/or moving against them, and hereby incorporates by reference any and all arguments Mr. Sitrick raises in opposition to the Subpoena and the Petition.