Howard L. Ganz
Neil H. Abramson
Adam M. Lupion
Susan D. Friedfel
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299
T: 212.969.3000
F: 212.969.2900
hganz@proskauer.com
nabramson@proskauer.com
alupion@proskauer.com
sfriedfel@proskauer.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
THE OFFICE OF THE COMMISSIONER OF BASEBALL,
                          Petitioner,

    against

MICHAEL S. SITRICK,

                          Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

13 CV 7990 (ER)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PETITIONER'S REQUEST FOR AN ORDER COMPELLING COMPLIANCE WITH A SUBPOENA AND MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO QUASH**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ..........................................................................................................4

I.      SITRICK SHOULD BE COMPELLED TO COMPLY WITH THE SUBPOENA .............4

      A.      Sitrick Was Properly Served ....................................................................4

            1.      Service Prior to Removal Is Governed by New York Law .........................4

            2.      Sitrick Was Served in Compliance with New York Law ............................5

            3.      This Court Has Personal Jurisdiction Over Sitrick ......................................8

            4.      Compelling Sitrick to Testify in New York Does Not Violate Due Process ..................................................................................9

      B.      There Is No Privilege That Justifies Non-Compliance ...............................11

            1.      Privilege Is an Issue for the Arbitrator, Not the Court..................................11

            2.      The Court Does Not Need to Determine Whether a Privilege Applied Because Any Privilege Has Been Waived .......................................12

            3.      The Requested Information and Documents Are Not Privileged .................14

      C.      The Subpoena Seeks Information That Is Of Utmost Relevance To The Issues In The Arbitration...................................................................18

CONCLUSION.......................................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Burham v. Superior Court,*
    495 U.S. 604 (1990)................................................................................9

*Calvin Klein Trademark Trust v. Wachner,*
    198 F.R.D. 53 (S.D.N.Y. 2000) .......................................................15, 17

*Camizzi v. United States,*
    10 CV 949A, 2011 U.S. Dist. LEXIS 1470 (W.D.N.Y. Jan. 5, 2011)......................................4

*Charles Dowd Box Co. v. Courtney,*
    368 U.S. 502 (1962)................................................................................4

*Coutts Bank Ltd. v. Rachamim Anatian,*
    275 A.D.2d 609, 713 N.Y.S.2d 45 (1st Dep't 2000) .........................................7, 8

*DuPont v. Bronston,*
    46 A.D.2d 369, 362 N.Y.S.2d 471 (1st Dep't 1974) ......................................8

*Fed. Ins. Co. v. Law Offices of Edward T. Joyce, P.C.,*
    No. 08 C 0431, 2008 U.S. Dist. LEXIS 20713 (N.D. Ill. Mar. 13, 2008) ..............................11

*Fed. Ins. Co. v. Tyco Int'l Ltd.,*
    422 F. Supp. 2d 357 (S.D.N.Y. 2006).................................................. 4-5

*First Am. Corp. v. Price Waterhouse LLP,*
    154 F.3d 16 (2d Cir. 1998).................................................................8, 9

*GPA, Inc. v. Liggett Group,*
    No. 94 Civ. 5735 (AGS), 1996 U.S. Dist. LEXIS 9644 (S.D.N.Y. July 10, 1996)................12

*Haugh v. Schroder Inv. Mgmt. N. Am. Inc.,*
    No. 02 Civ. 7955 (DLC), 2003 U.S. Dist. LEXIS 14586 (S.D.N.Y. Aug. 25, 2003)..............15

*In re Chevron Corp.,*
    749 F. Supp. 2d 170 (S.D.N.Y.), *aff'd* 409 F. App'x 393 (2d Cir. 2010).................. 14-15, 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
    236 F.R.D. 177 (S.D.N.Y. 2006) ........................................................10

*In re Penn Cent. Commercial Paper Litigation,*
    61 F.R.D. 453 (S.D.N.Y. 1973) .........................................................12

*In re Rivastigmine Patent Litig.,*
    237 F.R.D. 69 (S.D.N.Y. 2006) .........................................................18

ii

*Laufman v. Anpol Contractor*,
   No. 94 Civ. 5362, 1995 U.S. Dist. LEXIS 8214 (S.D.N.Y. June 9, 1995)............................19

*Lee v. City of Beaumont*,
   12 F.3d 933 (9th Cir. 1993) ...............................................................................................5

*Local Lodge 1746, Int'l Ass'n & Aerospace Workers, AFL-CIO v. Pratt & Whitney*,
   329 F. Supp. 283 (D. Conn. 1971)................................................................................11, 19

*Matter of Stephen*,
   239 A.D.2d 963, 659 N.Y.S.2d 588 (4th Dep't 1997)...........................................................8

*McNamee v. Clemens*,
   No. 09-cv-01647 (SJ) (E.D.N.Y. Sept. 18, 2013).........................................................16, 17

*Norsyn, Inc. v. Desai*,
   351 F.3d 825 (8th Cir. 2003) ...............................................................................................5

*NXIVM Corp. v. O'Hara*,
   241 F.R.D. 109 (N.D.N.Y. 2007).........................................................................................18

*Odfjell ASA v. Celanese AG*,
   348 F. Supp. 2d 283 (S.D.N.Y. 2004), *aff'd sub. nom. Stolt-Nielsen Transp. Group
   Inc. v. Celanese AG*, 430 F.3d 567 (2d Cir. 2005)...............................................................11

*Peterson v. Spartan Indus.*,
   40 A.D.2d 807, 338 N.Y.S.2d 352 (1st Dep't 1972) ............................................................8

*Ravenell v. Avis Budget Grp., Inc.*,
   No. 08-CV-2113 (SLT), 2012 U.S. Dist. LEXIS 48658 (E.D.N.Y. Apr. 5, 2012)................17

*Romo v. Gulf Stream Coach, Inc.*,
   250 F.3d 1119 (7th Cir. 2001) ..............................................................................................5

*Thomas v. F.F. Fin., Inc.*,
   128 F.R.D. 192 (S.D.N.Y. 1989) .........................................................................................14

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981)............................................................................................................14

*US v. IBM*,
   477 F. Supp. 698 (S.D.N.Y. 1979)......................................................................................10

*Usatorres v. Marina Mercante Nicaraguenses, S.A.*,
   768 F.2d 1285 (11th Cir. 1985) ............................................................................................5

*Walt Disney Co. v. Nat'l Ass'n of Broad. Emps. & Technicians*,
   10 Civ. 5982 (SHS), 2010 U.S. Dist. LEXIS 94524 (S.D.N.Y. Sept. 10, 2010)....................11

*Weber v. Paduano*,
No. 02 Civ. 3392, 2003 U.S. Dist. LEXIS 858 (S.D.N.Y. Jan. 14, 2003) ............................18

*Wiwa v. Royal Dutch Petroleum Co.*,
No. 96 Civ. 8386 (KMW) (HBP), 2009 WL 529224 (S.D.N.Y. Feb. 17, 2009) ....................10

## STATUTES

N.Y. C.P.L.R. 301 ............................................................................................................8

N.Y. C.P.L.R. 302 ............................................................................................................9

N.Y. C.P.L.R. 308 ............................................................................................................8

N.Y. C.P.L.R. 308(2) ..............................................................................................5, 6, 7

N.Y. C.P.L.R. 308(5) ............................................................................................................7

N.Y. C.P.L.R. 308(6) ..............................................................................................5, 6, 7

N.Y. C.P.L.R. 2303 ............................................................................................................5

N.Y. C.P.L.R. 7505 ............................................................................................................7

N.Y. Judiciary Law § 2 ............................................................................................................7

N.Y. Judiciary Law § 2-b ....................................................................................................6, 7

## OTHER AUTHORITIES

Local Civil Rule 26.2 ........................................................................................................18

Fed. R. Civ. P. 26 ............................................................................................................19

Fed. R. Civ. P. 26(b)(5) ....................................................................................................18

Fed. R. Civ. P. 45 ............................................................................................................4

Fed. R. Civ. P. 81(c) ............................................................................................................4

1 McCormick on Evid. § 97 ............................................................................................12

## PRELIMINARY STATEMENT

Both Respondent Michael Sitrick ("Sitrick"), the Chief Executive Officer of Sitrick And Company ("Sitrick & Co.") and Intervenor Alex Rodriguez ("Rodriguez") rely on a litany of unmeritorious legal arguments to avoid disclosing extremely limited information directly relevant to (and damaging of) Rodriguez's claims in his pending grievance against The Office of the Commissioner of Baseball ("MLB"). For months, MLB has sought to obtain documents and information from Rodriguez and his representatives concerning Rodriguez's obstruction of and interference with MLB's investigation of possession and/or the use of banned performance enhancing substances ("PES") by Major League Players - including, but undisputedly *not*, limited to Rodriguez - but has been stonewalled at every turn. (Reply Declaration of Howard L. Ganz, dated November 18, 2013, hereinafter "Ganz Reply Decl.," ¶ 2.)

More specifically, MLB has sought and continues to seek the records originally belonging to Anthony Bosch ("Bosch") and/or "anti-aging" clinics with which he was associated (*i.e.*, Biogenesis and related entities) that Rodriguez obtained in an effort to prevent MLB from obtaining those records and discovering his extensive involvement with Bosch and his use of banned PES. (Ganz Reply Decl., ¶ 2.) Neither Rodriguez nor Sitrick have denied that Rodriguez or others acting on his behalf provided these documents to Sitrick & Co., a public relations advisor retained to provide services for Rodriguez; and neither Rodriguez nor Sitrick have denied that Sitrick & Co. then provided certain of these records to *Yahoo! Sports*. (Verified Petition,[1] ¶¶ 18-19; Ganz Reply Decl., ¶¶ 3-6.)

---

[1]   The Verified Petition, along with the Petitioner's Memorandum of Law ("Petit. Mem."), the Affidavit of Howard L. Ganz ("Ganz Aff."), Exhibits 1 through 7, and the Order to Show Cause to Compel Compliance with Subpoena filed in New York State Supreme Court on October 30, 2013, were attached to the Declaration of Howard L. Ganz in Support of the Order to Show Cause ("Ganz Decl."), dated November 12, 2013, as Exhibit A, and filed with this Court on November 14, 2013. *See* Dkt. Nos. 6-7.

As Rodriguez's counsel confirmed at the hearing on this matter on November 12, 2013, Rodriguez expressly authorized Sitrick to provide MLB with a sworn declaration that neither Sitrick nor Sitrick & Co. had or ever had records belonging to Bosch and/or Biogenesis.  (Ganz Reply Decl., ¶ 5, Ex. C.)  That sworn declaration remains unsigned, despite Rodriguez's request that it be signed, because its contents are not true.  (Ganz Reply Decl., ¶ 6.)  Ironically, Rodriguez now seeks to intervene in this proceeding for the sole purpose of preventing Sitrick from disclosing the very same information he authorized Sitrick to provide to MLB.

While Sitrick now claims that he did not personally have the Bosch records and that he did not provide any documents to *Yahoo! Sports*, that assertion is of no moment.  (*See* Declaration of Michael S. Sitrick in Opposition to Order to Show Cause to Compel Compliance with Subpoena ("Sitrick Decl."), ¶¶ 12.)  MLB never claimed that Sitrick was the Sitrick & Co. employee who obtained the Bosch records from Rodriguez and subsequently provided those records to *Yahoo! Sports*.  Indeed, all parties to the arbitration – MLB, Rodriguez and the Major League Baseball Players Association, Rodriguez's collective bargaining representative – agreed that MLB is entitled to know whether Sitrick *or any other employee of Sitrick & Co*. had such documents and provided them to *Yahoo! Sports.* (Verified Petition, ¶¶ 17-19.)  Sitrick, as the CEO of Sitrick & Co., should be compelled to testify on those subjects and to provide responsive non-privileged documents in the possession, custody and control of Sitrick & Co.

Sitrick's continued refusal to comply with a valid and enforceable trial subpoena – presumably because compliance with the subpoena would require him to testify that he knows that Bosch's records were provided to *some* employee at Sitrick & Co. – is based on flawed notions of civil procedure and frivolous assertions of attorney-client privilege.  As discussed in greater detail below, Rodriguez cannot cloak the Bosch/Biogenesis documents with a privilege

2

simply by conveying those documents to his public relations advisor or his counsel.  Documents of the type at issue here are never privileged; only communications seeking or conveying legal advice are covered by the attorney-client privilege.  In addition, communications between Sitrick & Co. on the one hand ***and members of the media or any other third party*** on the other cannot possibly be immune from disclosure under the broadest interpretation of any privilege.  In any case, Rodriguez himself waived any privilege when he expressly authorized Sitrick to provide MLB with the information that is the subject of the subpoena he now seeks to quash.  (Ganz Reply Decl., ¶ 5, Ex. D.)

As counsel for MLB made clear at the November 12 hearing (and in discussions prior thereto with the attorneys for Sitrick), the information sought is extremely limited.  MLB seeks only information and documents concerning:

     (i)     Whether Sitrick and/or Sitrick & Co has or ever had possession, custody or control of any records (originals or copies, and whether in hard copy or electronic form) of Anthony Bosch, Biogenesis or related entities, except for any copies of such records that  Sitrick and/or Sitrick & Co. may have obtained through publically available sources, such as through the media or the Internet; and

     (ii)     If so,

          (a)  Whether Sitrick and/or Sitrick & Co. received any such documents from Rodriguez or others acting on his behalf, and

          (b)  Whether Sitrick and/or Sitrick & Co. provided any such documents to *Yahoo! Sports*.

(Ganz Aff., Ex. 1.)  MLB also seeks the production of any such documents that are currently in the possession, custody or control of Sitrick and/or Sitrick & Co.; or, if such documents were at

one time, but no longer are, in the possession, custody or control of Sitrick and/or Sitrick & Co.,

what disposition was made of such documents.  (Ganz Aff., Ex. 1.)

The subpoena was authorized, served in accordance with well-settled New York law,

seeks non-privileged documents and testimony that bear directly on the claims in the arbitration,

and should be enforced.

**ARGUMENT**

**I.**

**SITRICK SHOULD BE COMPELLED TO COMPLY WITH THE SUBPOENA.**

**A.**     **Sitrick Was Properly Served.**

1.     Service Prior to Removal Is Governed by New York Law.

Sitrick's extensive reliance on Section 301 of the Labor Management Relations Act, the

Federal Arbitration Act, and Federal Rule of Civil Procedure 45 is misplaced.  There is nothing

in any of these statutes or rules that invalidates the service of the subpoena on Sitrick here.  As

an initial matter, MLB does not dispute that this Court has subject matter jurisdiction pursuant to

Section 301.  However, the fact that Respondent chose to remove the case to federal court does

not invalidate the service pursuant to New York law prior to removal.[2]  Indeed, Federal Rule of

Civil Procedure 81(c) provides that the Federal Rules "apply to a civil action *after* it is removed

from a state court."  [Emphasis added.]  The Federal Rules do not apply to filings in a state court

action, even if the action is later removed to federal court.  *See Camizzi v. United States,* 10 CV

949A, 2011 U.S. Dist. LEXIS 1470 (W.D.N.Y. Jan. 5, 2011) (holding that state court rules

---

[2]     There can be no dispute that this proceeding was appropriately commenced in New York State Court.  As the
United States Supreme Court unequivocally has held, state courts have concurrent subject matter jurisdiction
with federal courts to decide cases arising under Section 301. *See*, *e.g.*, *Charles Dowd Box Co. v. Courtney*, 368
U.S. 502, 511 (1962) ("the purpose of conferring jurisdiction upon the federal district courts was not to
displace, but to supplement, the thoroughly considered jurisdiction of the courts of the various States over
contracts made by labor organizations").

4

regarding service of process apply to pre-removal conduct); *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 383 (S.D.N.Y. 2006) (applying state procedural law in evaluating pre-removal conduct).  *See also Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 (7th Cir. 2001) (holding that validity of service prior to removal must be assessed under state law); *Norsyn, Inc. v. Desai,* 351 F.3d 825, 829 (8th Cir. 2003) ("Since [service] occurred prior to removal, we must determine whether it constituted sufficient service in accordance with the law of the jurisdiction in which the action was filed."); *Lee v. City of Beaumont,* 12 F.3d 933, 936-37 (9th Cir. 1993) ("The issue of the sufficiency of service of process prior to removal is strictly a state law issue . . . ."); *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285, 1286 n.1 (11th Cir. 1985) (noting that a federal court may review, after removal, the sufficiency of process by looking to state law).

Accordingly, the sufficiency of the service made here is to be determined in accordance with New York law; and, as demonstrated below, the service of the subpoena on Sitrick was in compliance with New York law.

2.    Sitrick Was Served in Compliance with New York Law.

The subpoena here was served in accordance with the provisions of the New York Civil Practice Law and Rules ("CPLR").  CPLR 2303 provides that a subpoena shall be served in the same manner as a summons; CPLR 308(2) authorizes service of such process upon a natural person by delivering that process within New York to a person of suitable age and discretion at that person's "actual place of business"; and CPLR 308(6) defines "actual place of business' to include "any location that the defendant, through regular solicitation or advertisement, has held out as its place of business."

Here, there is and can be no dispute that the subpoena was delivered to a person of suitable age and discretion at the New York City office of Sitrick & Co. at 7 Times Square. (Ganz Aff., Ex. 1.)  And it is clear that this location is Sitrick's "actual place of business" within the meaning of CPLR 308(2) and 308(6) – because it is a location that, "through regular solicitation or advertisement," Sitrick has held out as his place of business.  Indeed, the "vCard" available for download from Sitrick's biographical page on the Sitrick & Co. website identifies Sitrick & Co.'s New York office as a personal place of business for Sitrick (and, in fact, provides New York telephone and fax numbers for Sitrick) (Ganz Aff., Ex. 3) – and, in fact, Sitrick acknowledges that, at least "from time-to-time," he conducts business in New York as Sitrick & Co.'s CEO meeting with clients and members of the media in New York.  (Sitrick Decl., ¶¶ 4, 14.)[3]

In sum, because Sitrick & Co.'s New York office is Sitrick's "actual place of business" within the meaning of the CPLR provisions referenced above, service of the subpoena at that location was proper without regard to whether Sitrick happened to be in California at the time of such service.

Respondent's claim that the subpoena was not served in compliance with N.Y. Judiciary Law § 2-b has no merit.   The rule provides that,

> A court of record has power (1) to issue a subpoena requiring the attendance of a person found in the state to testify in a cause pending in that court, subject, however to the limitations prescribed by law with respect to the portion of the state in which the process of the local court of record may be served… .

N.Y. Judiciary Law § 2-b.

---

[3]   This is hardly surprising for the CEO of a company that, on its website, declares itself to be one of the top strategic communications companies "in the nation," providing advice to some of "the nation's" largest corporations and some of "our nation's" highest profile individuals.  (Ganz Aff., Ex. 3.)

Respondent argues that service was invalid pursuant to N.Y. Judiciary Law § 2-b because Mr. Sitrick was not found or physically present in New York when the subpoena was served. But that argument ignores the obvious point that CPLR 308(2) and 308(6) say nothing about the physical presence of the witness, but rather provide that a person who, "through regular solicitation or advertisement" holds out New York as his place of business, may properly be served at that place of business.  These are precisely the circumstances here.

In addition, Respondent's reliance upon N.Y. Judiciary Law § 2-b is inapposite as it relates only to the geographic limitations on a *court of record*'s authority to issue a subpoena. [4] This Subpoena, however, was not issued by a court of record as defined in N.Y. Judiciary Law § 2; it was issued by the arbitrator pursuant to the powers conferred on him both by Section 301 and CPLR 7505, which impose no geographic limitations.  Thus, the provisions of N.Y. Judiciary Law § 2-b do not apply.

Moreover, Respondent's contention that the law requires that he be physically present in the state of New York at the time of service of the subpoena is contrary to the well-settled law on this subject.  *See Coutts Bank Ltd. v. Rachamim Anatian*, 275 A.D.2d 609, 713 N.Y.S.2d 45 (1st Dep't 2000).  In that case, the Court held that service of a subpoena was valid where it was served upon the defendant's attorneys in compliance with CPLR 308(5), despite the fact that the individual was not physically present in the state.  In his concurring opinion, Justice Sullivan explained that the phrase "found in the state" is not defined in the Judiciary Law and that the

---

[4]   N.Y. Judiciary Law § 2 provides that each of the following courts of the state is a court of record: (1) The court for the trial of impeachments; ( 2) A court on the judiciary; (3) The court of appeals; (4) The appellate division of the supreme court in each department; (5) The supreme court; (6) The court of claims; (7) A county court in each county, except the  counties  of  New York, Bronx, Kings, Queens and Richmond; (8) The family court; (9) A surrogate's court in each county;  (10) Each city court outside the city of New York; (11) The district court in each county or portion thereof in which such court shall be established; (12) The civil court of the city of New York and the criminal court of  the city of New York.

phrase has been interpreted to refer to the location of service rather than the location of the witness.  *See Coutts Bank Ltd.*, 275 A.D.2d at 610-11, 713 N.Y.S.2d at 46-47, *citing Matter of Stephen*, 239 A.D.2d 963, 659 N.Y.S.2d 588, 589 (4th Dep't 1997); *DuPont v. Bronston*, 46 A.D.2d 369, 362 N.Y.S.2d 471 (1st Dep't 1974); *Peterson v. Spartan Indus.*, 40 A.D.2d 807, 338 N.Y.S.2d 352 (1st Dep't 1972).   The holding in *Coutts* is directly applicable here.  Unlike the cases cited by Respondent, service of the subpoena was effectuated *in* New York State in accordance with CPLR 308.

    3.    <u>This Court Has Personal Jurisdiction Over Sitrick.</u>

This Court has personal jurisdiction over Sitrick because he was served in New York, as discussed above.  A significant portion of Respondent's brief is focused upon whether Mr. Sitrick was "doing business" in New York such that general jurisdiction would be conferred pursuant to CPLR 301, which would permit him to be served outside New York.  It is not necessary to reach that question, however, because Mr. Sitrick was served in New York pursuant to CPLR 308.   *See First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 19 (2d Cir. 1998) (holding that the court need not reach the question of whether the nonparty was "doing business" in New York pursuant to CPLR 301 because there was personal jurisdiction based upon the fact that the partnership was properly served within New York state pursuant to the CPLR).  The same result is required here.[5]  Similarly, Respondent's arguments as to whether the claims at issue arise out of Mr. Sitrick's business activity in New York are inapposite because Mr. Sitrick

---

[5]    In any event, Sitrick does not assert that his presence in New York was or is isolated or fleeting.  To the contrary, in addition to directing visitors to the Sitrick & Co. website to contact him in New York, Sitrick acknowledges coming to New York, at least from "time-to-time," to conduct business in New York.  (Sitrick Decl. ¶ 4.)

was served in New York; therefore, the Court need not decide whether long-arm jurisdiction would apply pursuant to CPLR 302.

    4.    <u>Compelling Sitrick to Testify in New York Does Not Violate Due Process.</u>

Sitrick's claim that compelling him to comply with the subpoena would violate due process is not applicable here for the simple reason that service upon Respondent in New York, in and of itself, satisfies due process.  *See First Am. Corp.*, 154 F.3d at 20, (relying upon *Burham v. Superior Court*, 495 U.S. 604 (1990) and holding that due process is satisfied based upon service of foreign partnership in the state and noting that a party "subjected to liability by service of process far from home may have better cause to complain of an outrage to fair play than one similarly situated who is merely called upon to supply documents or testimony.")

Even if this Court were to apply the due process factors as set forth in Respondent's brief, however, due process is satisfied.  Sitrick's claim that he will be unduly burdened by the Court's exercise of jurisdiction is disingenuous.  Sitrick maintains a residence in New York and has an office in New York only blocks from the site of the arbitration. (Ganz Reply Decl. Ex. F.) Moreover, unlike a circumstance where jurisdiction is being exercised over a defendant who will be expected to be present in the jurisdiction frequently on an ongoing basis, Mr. Sitrick is only being asked to be present to give testimony on a single occasion.  Furthermore, Sitrick's suggestion that he could not have reasonably contemplated that his rendition of services on Rodriguez's behalf might involve him in legal proceedings in New York is inconsistent with his claim that everything he did was protected by the attorney-client privilege.  (Sitrick Decl., ¶ 13; *see also* Rodriguez Memorandum of Law, hereinafter "Rodriguez Mem.", at 15.)  If, in fact, Sitrick's retention was for the purpose of facilitating legal advice in the event Rodriguez was disciplined by MLB, he should have reasonably expected that any legal proceedings with respect

to a player for the *New York* Yankees would take place in New York, where MLB has its headquarters.

Moreover, there can be no question that New York has an interest in adjudicating this matter, as the arbitration is taking place in New York and relates to an individual employed in New York. New York has an interest in ensuring that the parties are able to fully litigate their claims.

Although Mr. Sitrick claims that he personally has not seen the Biogenesis documents and that he did not have any direct communications with *Yahoo! Sports* on Mr. Rodriguez's behalf, he does not deny that other Sitrick & Co. employees had possession of the documents. The fact that Mr. Sitrick claims that he does not have the documents in his personal files is irrelevant. As CEO of the company, he can be compelled to produce corporate records under his control. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 181 (S.D.N.Y. 2006) (holding that individual must produce requested documents because, as an executive, he has control over the corporation's documents); *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386 (KMW) (HBP), 2009 WL 529224, at *2-3 (S.D.N.Y. Feb. 17, 2009) (compelling officers of a company to produce the company's responsive documents, regardless of whether the officer had actual possession of the documents); *US v. IBM*, 477 F. Supp. 698, 699 (S.D.N.Y. 1979) (holding that nonparty officer of defendant corporation could personally be compelled to produce documents that were not in his individual files because "it is unreasonable to believe that in the exercise of his duties [the VP] has no control over files other than his own"). It would simply not be credible for Mr. Sitrick to claim that he lacks control over the documents in question, as he is CEO of the company and he was retained by Mr. Rodriguez and provided services to Mr. Rodriguez.

**B.**   **There Is No Privilege That Justifies Non-Compliance.**

    1.    <u>Privilege Is an Issue for the Arbitrator, Not the Court.</u>

As a threshold matter, any claim of privilege can be and should be adjudicated by the Arbitrator who issued the Subpoena, rather than by this Court.  See *Walt Disney Co. v. Nat'l Ass'n of Broad. Emps. & Technicians*, 10 Civ. 5982 (SHS), 2010 U.S. Dist. LEXIS 94524 (S.D.N.Y. Sept. 10, 2010).  In that decision, the principal case upon which Respondent relies in support of removal, the court held that an issue of privilege relating to a non-party subpoena should be determined by the arbitrator.  The court noted that "[i]t would make little sense if arbitrators in labor cases have the power to subpoena documents but could not decide such related issues as admissibility and privilege."  *Id.* at *9.  Similarly, in *Odfjell ASA v. Celanese AG*, 348 F. Supp. 2d 283, 288 (S.D.N.Y. 2004), *aff'd sub. nom. Stolt-Nielsen Transp. Group Inc. v. Celanese AG*, 430 F.3d 567 (2d Cir. 2005), the court ruled "that objections on the grounds of privilege and the like should first be heard and determined by the arbitrator before whom the subpoena is returnable," and for that reason, dismissed a non-party's motion to quash an arbitral subpoena as unripe.  *See also Fed. Ins. Co. v. Law Offices of Edward T. Joyce, P.C.*, No. 08 C 0431, 2008 U.S. Dist. LEXIS 20713, at *3 (N.D. Ill. Mar. 13, 2008) (holding that challenges to an arbitral subpoena regarding privilege and overbreadth "should be raised with the arbitration panel" and "should [not] be decided by a court in the first instance"); *Local Lodge 1746, Int'l Ass'n & Aerospace Workers, AFL-CIO v. Pratt & Whitney*, 329 F. Supp. 283, 287 (D. Conn. 1971) (compelling compliance with an arbitration subpoena over an objection that the subpoena called for privileged documents on the grounds that the arbitrator is competent to evaluate privilege claims).

Here, the privilege belongs to Rodriguez, who is a party to the arbitration and who will have the opportunity to advance any privilege objections before the Arbitration Panel.  Thus, Rodriguez's and Sitrick's claim that the subpoena seeks privileged information does not provide a basis on which this Court should deny its enforcement.

> 2.    The Court Does Not Need to Determine Whether a Privilege Applied
>         Because Any Privilege Has Been Waived.

Counsel for Rodriguez asserts that "the privilege invoked by the requests in the Subpoena belongs to Mr. Rodriguez"[6] – and we agree with that assertion.  But "[i]t is hornbook law that the voluntary disclosure *or consent to the disclosure of a communication*, otherwise subject to a claim of privilege, effectively waives the privilege."  *In re Penn Cent. Commercial Paper Litigation*, 61 F.R.D. 453, 463 (S.D.N.Y. 1973) (*citing* 1 McCormick on Evid. § 97 (1954)) (emphasis added).  *See also GPA, Inc. v. Liggett Group*, No. 94 Civ. 5735 (AGS), 1996 U.S. Dist. LEXIS 9644, at *6 (S.D.N.Y. July 10, 1996) ("As a general matter, the attorney-client privilege is waived if the 'holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication.'") (citations omitted).

Here, Rodriguez consented to disclosure of the information at issue.

In an effort to resolve a discovery dispute in the arbitration proceeding with respect to the production of information and documents by Sitrick & Co., and unwilling simply to accept the representation of Rodriguez's counsel that Sitrick & Co. did not have and never did have possession, custody or control of the documents that MLB had long sought, MLB proposed that Rodriguez request Sitrick to execute an affidavit confirming that representation.  (Ganz Reply Decl., ¶ 3.)  The Sitrick affidavit, as submitted for review by the attorneys for Rodriguez and the Players Association on September 6, 2013, provided, in full, as follows:

---

[6]    *See* Rodriguez Mem. at 9.

1. I am employed by Sitrick and Company ("Sitrick"), a public relations firm that was retained by the firm of Black Srebnick Kornspan Stumpf ("the Black firm") to provide services on behalf of Alex Rodriguez, at the time Mr. Rodriguez was a client of the Black firm; and I make this affidavit at the request of Mr. Rodriguez and Joseph Tacopina, of the firm of Tacopina, Seigel & Turano, Mr. Rodriguez's current counsel.

2. Neither I nor Sitrick has or ever had possession, custody or control of any records (originals or copies, and whether in hard copy or electronic form) of Anthony Bosch, Biogenesis or related entities, except for any copies of such records that I or others at Sitrick may have obtained through publically available sources, such as through the media or the internet.

(Ganz. Aff., Ex. 6; Ganz Reply Decl., Ex. A.)[7]

On September 13, 2013, MLB counsel wrote to the Arbitrator, calling his attention to the fact that MLB had received no response from Rodriguez's attorneys to the affidavit proposed for the signature of Sitrick.  (Ganz Reply Decl., ¶ 4, Ex. C.)  On September 15, 2013, responding to the letter sent to the Arbitrator, Joseph Tacopina, one of Rodriguez's attorneys, sent an e-mail message to MLB counsel, stating as follows:

> Howard, you've received no response because we did not have an issue with your proposed language.  The affidavits have been forwarded to Black/Sitrick ***with Mr. Rodriguez [sic] request that they be executed.***  We will let you know when we receive a response from them.

(Ganz Reply Decl., ¶ 5, Ex. D; emphasis added.)

MLB never received a response from Sitrick (or Mr. Tacopina).  (Ganz Reply Decl., ¶ 6.) Indeed, notwithstanding Mr. Tacopina's September 15 representation that the affidavit had been forwarded to Sitrick, Sitrick has averred in this proceeding that neither he nor his counsel received a copy of that document until October 29, 2013 – after the media had contacted him concerning MLB's initial application for an order to show cause and after communications between MLB counsel and his lawyer.  (Ganz Reply Decl., ¶ 6; Sitrick Decl ¶ 8.)

---

[7]   MLB also proposed that Rodriguez request Roy Black of the Black Firm to execute a similar affidavit.  (Ganz Reply Decl. ¶ 3, Ex. B.)

Based upon the foregoing – and even putting aside the chicanery in which counsel for Rodriguez has apparently engaged – it is clear that to the extent any privilege existed, it was waived once Rodriguez through his counsel advised that Rodriguez as holder of the privilege consented that the allegedly privileged information – the subject matter of the Sitrick affidavit – be disclosed.  (Ganz Reply Decl., ¶ 5, Ex. D.)  And that waiver is coextensive with the information MLB seeks here – *i.e.*, the possession, custody or control by Sitrick and/or Sitrick & Co. of any records (originals or copies, and whether in hard copy or electronic form) of Anthony Bosch, Biogenesis or related entities, except for any copies of such records that Sitrick or others at Sitrick & Co. may have obtained through publically available sources, such as through the media or the Internet.  *See Thomas v. F.F. Fin., Inc*., 128 F.R.D. 192, 193 (S.D.N.Y. 1989) (noting that "the waiver by the client as to a particular communication may be extended to encompass the subject matter of the communication.  In other words, as formulated by Wigmore, 'the client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter.'")

3.      The Requested Information and Documents Are Not Privileged.

Even if there were no waiver, there was never a valid privilege to begin with.  In the first instance, the documents that are the subject of the subpoena (*i.e.*, the Bosch/Biogenesis records) are not privileged because they are facts that were recorded by a third party.  *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (noting that the "protection of the privilege extends only to *communications* and not to facts") (emphasis in original).  Moreover, communications between Sitrick & Co. on the one hand and third parties (such as members of the media, including but not limited to *Yahoo! Sports*) on the other, likewise are not  covered by any privilege.  *See In re Chevron Corp.*, 749 F. Supp. 2d 170, 185 n. 64 (S.D.N.Y.), *aff'd* 409 F.

14

App'x 393 (2d Cir. 2010) (Noting that "[i] t is difficult to see how correspondence with the Wall Street Journal and the like could be a confidential communication between attorney and client for the purpose of rendering or receiving legal advice" and that the assertions of privilege "with respect to the communications with the media and a public relations person are especially troublesome").

With respect to communications between Sitrick & Co. on the one hand and Rodriguez and/or his counsel on the other, the law in this Circuit is clear that no privilege attaches to the inquiry whether Rodriguez or others acting on his behalf directed Sitrick and Co to disclose that information to third parties.

Courts within this Circuit have been quite skeptical of the so-called public relations privilege. *See*, *e.g.*, *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, No. 02 Civ. 7955 (DLC), 2003 U.S. Dist. LEXIS 14586, at *8-10 (S.D.N.Y. Aug. 25, 2003) ("Plaintiff has not shown that [the public relations specialist] performed anything other than standard public relations services . . . [and] has not shown that her communications . . . were necessary so that [the lawyer] could provide [plaintiff] with legal advice" and noting that "[s]ome attorneys may feel it is desirable at times to conduct a media campaign, but that does not transform their coordination of a campaign into legal advice"); *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (agency exception inapplicable to public relations communications that "simply serve[] to assist counsel in assessing the probable public reaction to various strategic alternatives, as opposed to enabling counsel to understand aspects of the client's own communications that could not otherwise be appreciated in the rendering of legal advice").

A very recent decision in the Eastern District of New York involving Roger Clemens, a former high profile Major League Player, is directly on point. In that case, the court addressed

the same arguments Rodriguez and Sitrick attempt to advance here, and held that neither the attorney-client nor work-product privilege attach to communications between a professional baseball player accused of using PES and his attorneys and public relations firm.  *See McNamee v. Clemens*, No. 09-cv-01647 (SJ) (E.D.N.Y. Sept. 18, 2013) (Dkt. No. 93).

In *McNamee*, the plaintiff Brian McNamee, Clemens' former trainer, sought an order requiring the production of all communications between Clemens and his public relations firm, which were withheld from production on grounds of attorney-client and work product privileges. Clemens hired the public relations firm through his attorney, Rusty Hardin, several days after the release of a report identifying Clemens as a PES user.  After reviewing certain communications *in camera*, the court found that the documents were not privileged because "the majority of the communications . . . facilitated the development of a public relations campaign and media strategy primarily aimed at protecting Clemens' public image and reputation in the face of allegations that he used performance-enhancing drugs." *Slip op.* at 12.  Indeed, certain communications between counsel and the public relations firm related to whether the latter should contact reporters and columnists "who might be sympathetic to Clemens." *Id.* at n.11. The court distinguished the very same cases on which Sitrick and Rodriguez rely here, noting that "[t]his is decidedly different from the use of the public relations firm in *In re Grand Jury Subpoenas*, where the firm was hired by plaintiff's counsel with the specific aim of reducing public pressure on prosecutors and regulators to bring charges…No such showing has been made here." *Id.* at 12.  The court cautioned that the "communication itself must be primarily or predominantly of a legal character" and "[e]xpansions should be 'cautiously extended.'" *Id.* at 11 (citations omitted).

16

The court also rejected the notion that such communications fell under the protection of the attorney work product doctrine, finding that litigation strategy was rarely mentioned, and when it was brought up, "it is often contained within communications predominately focused on public relations and media strategy." *Id.* at 15.  Further, the court observed, "'as a general matter public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine…That is because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or the public generally.'" *Id.* at 15-16 (*quoting Calvin Klein Trademark Trust*, 198 F.R.D. at 55)).

The same result, we respectfully submit, should obtain here.  Sitrick and Rodriguez admit that Sitrick & Co. was first retained on or about January 25, 2013 – shortly before the public release of the *Miami New Times* article that identified Rodriguez and a number of other Major League Players as having used PES.  (Sitrick Decl., ¶ 9; *see also* Rodriguez Mem. at 2). Although both Rodriguez and Sitrick vaguely refer to "Mr. Rodriguez's legal defense efforts" (Rodriguez Mem. at 13; *see also* Sitrick Mem. at 17-18), to be sure there was no action at that time either pending or overtly threatened for Mr. Rodriguez to defend, much less a "high profile grand jury investigation," which courts within this Circuit have held is necessary to successfully invoke the privilege.  *See In re Chevron Corp.*, 749 F. Supp. 2d at 184 n.64 (interpreting *Grand Jury Subpoena* as having a "very narrow holding" and applicable only in "cases such as…high profile grand jury investigation[s]"); *Ravenell v. Avis Budget Grp., Inc.*, No. 08-CV-2113 (SLT), 2012 U.S. Dist. LEXIS 48658, at *13 (E.D.N.Y. Apr. 5, 2012) ("The reach of [In re Grand Jury Subpoenas Dated March 24, 2003 is] limited by its context:  the Court couched its finding in the

narrow scenario of public relations consultants assisting lawyers during a high profile grand jury

investigation.")[8]

      This is not, it should be noted, the first time that Sitrick & Co. has attempted to shield

discoverable communications under the guise of attorney-client privilege.   Indeed, another court

in this Circuit was highly critical of a stratagem deployed by Sitrick & Co. and others in *NXIVM*

*Corp. v. O'Hara*, 241 F.R.D. 109 (N.D.N.Y. 2007).  Specifically, the court noted that:

> [Counsel's] hiring of Sitrick was a facade and not for the purpose of helping
> [counsel] provide legal advice to NXIVM but to give cover to communications
> between NXIVM, Interfor, and Sitrick. [Counsel] never used Sitrick's services
> and as far as the record reveals neither did any other law firm working on behalf
> of NXIVM. Only NXIVM's principles availed themselves of Sitrick's
> professional services. [Counsel] and his law firm were used as an intermediaries
> in name only - a mule - with the anticipated effect of concealing all conversations
> and all actions under the cloak of an attorney-client privilege or work product,
> without any particular professional involvement on his part. [Counsel's]
> involvement was nothing more than a tool to achieve secrecy, not to give legal
> advice.

*Id*. at 140.

      The Court should not allow the same "façade" to shield communications between

Rodriguez and Sitrick & Co. that did not involve the provision of any legal advice but were

instead solely focused on a public relations strategy.

**C.**    **The Subpoena Seeks Information That Is Of**
       **Utmost Relevance  To The Issues In the Arbitration.**

      The contentions of Rodriguez and Sitrick that the subpoena should be quashed because it

seeks irrelevant information are entirely without merit.  First, relevance is an issue to be decided

---

[8]    Moreover, to the extent that any responsive documents are being withheld on a claim of privilege, Sitrick is
obligated to provide a sufficiently detailed log so as to enable MLB to challenge any privilege assertion.  *See*,
*e.g.*, *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69 (S.D.N.Y. 2006); *Weber v. Paduano*, No. 02 Civ. 3392,
2003 U.S. Dist. LEXIS 858, at *34 (S.D.N.Y. Jan. 14, 2003) (holding that a non-party must describe documents
for which privilege is claimed on a log and that "[u]nder certain circumstances, the failure to provide a privilege
log can result in a waiver of privilege as to the documents that have not been produced"); *see also* Fed. R. Civ.
P. 26(b)(5); Local Civil Rule 26.2.

by the arbitrator who issued the subpoena.  *See*, *e.g.*, *Laufman v. Anpol Contractor*, No. 94 Civ. 5362, 1995 U.S. Dist. LEXIS 8214, at *2-3, (S.D.N.Y. June 9, 1995) (holding that it is for the arbitrator to determine relevance of the requested documents and testimony and finding such an approach "sensible"); *Local Lodge 1746, Int'l Ass'n of Machinists & Aerospace Workers  v. Pratt & Whitney*, 329 F. Supp. 283, 287 (D. Conn. 1971) (deferring relevance determination to the arbitrator because "it must be assumed that the presiding arbitrator is an experienced person well versed in evaluating the alleged claims of the employer" and should "determine[] it to be relevant evidence in the dispute").[9]  In this respect, it bears particular emphasis that all parties to the arbitration – including Rodriguez – have acknowledged that the subject matter of the subpoena is indeed relevant.  Thus, the MLBPA agreed that MLB was entitled to Bosch/Biogenesis documents in Sitrick & Co.'s possession, and Rodriguez also agreed to ask Sitrick whether Sitrick & Co. has or ever had such information.  (Verified Petition, ¶ 18.) Rodriguez's eleventh-hour objection on relevance grounds, which directly contradicts the parties' respective positions in the arbitration, should be rejected for this reason alone.

In the event that this Court opts to examine relevance *de novo*, MLB easily satisfies the liberal discovery standards embodied in Fed. R. Civ. P. 26.  One issue in the arbitration is whether Rodriguez engaged in a course of conduct designed to conceal his PES use and to interfere with and obstruct MLB's investigation into the use of PES by Major League Players. (Verified Petition, ¶¶ 7-10.)  One of the allegations in support of that claim is that Rodriguez obtained the Bosch/Biogenesis records in order to prevent MLB from obtaining them, and that Sitrick & Co. subsequently provided certain of those records to *Yahoo! Sports*.  (*Id.*; *see also* Ganz Aff., ¶¶ 10-11.)  The question whether Sitrick & Co. had the Bosch/Biogenesis documents,

---

[9]   The Rules of Procedure applicable to the arbitration hearing concerning the grievance filed by Rodriguez provide, *inter alia*, that "[t]he Panel Chair shall be the judge of the relevancy and materiality of the evidence offered. . . ."  (Ganz Reply Decl., ¶ 7, Ex. E.)

whether it obtained them from Rodriguez (or others acting on his behalf) and whether Sitrick & Co. released certain records to third parties all bear directly on whether Rodriguez had obtained the Bosch/Biogenesis documents to prevent MLB from obtaining them.  While we understand that Rodriguez intends to dispute these claims, MLB is nonetheless entitled to discovery bearing on these issues.

Moreover, and contrary to Rodriguez's assertion, the underpinning of MLB's good faith belief that Rodriguez did in fact obstruct its investigation is well-founded.  Thus, after agreeing to provide MLB with a certification from Sitrick & Co. that it never had the Bosch/Biogenesis documents, the MLBPA advised MLB that it was unable to provide any such certification and also that it was unable to make a representation to that effect.  (Ganz Aff., ¶ 12.)  In addition, after Rodriguez's counsel advised MLB that Rodriguez had personally requested that Sitrick sign a sworn statement that Sitrick & Co. did not have and never had the Bosch/Biogenesis documents, no such statement was signed.  (Ganz Reply Decl., ¶¶ 5-6.)

Rodriguez's additional contention that the alleged conduct of his public relations advisor – *i.e.*, its leaking to the media of the names of additional Major League Players identified as having received PES from Bosch/Biogenesis – is inconsistent with obstruction is patently absurd. According to Rodriguez, leaking additional names to the media would be "counterproductive" to his obstruction efforts because, so the theory goes, that would have provided MLB with more information.  (Rodriguez Mem. at 19-20).  Rodriguez ignores, however, that he leaked what he hoped would implicate ***other*** players with respect to the use of PES (presumably, it appears to divert attention from himself) and that he did so anonymously – hoping, of course, that he would never be uncovered as the source.  The notion that the release of the documents in these circumstances was tantamount to some sort of whistleblowing activity is absurd in the extreme.

Moreover, his mere possession of the Bosch/Biogenesis records is sufficient evidence of obstruction, regardless of what he actually did with those documents after he had obtained them. Thus, MLB has amply demonstrated the relevance of the information requested in the subpoena.

## **CONCLUSION**

This Court should compel Sitrick to comply with the Subpoena, which was duly authorized and properly served and which seeks testimony and documents that are relevant and significant to the Arbitration, and should deny Rodriguez's motion to quash the subpoena, and any further relief that this Court deems just and proper.

Dated: November 18, 2013
      New York, New York

PROSKAUER ROSE LLP

By:/s/ Howard L. Ganz
    Howard L. Ganz
    Neil H. Abramson
    Adam M. Lupion
    Susan D. Friedfel
    11 Times Square
    New York, NY 10036-8299
    Tel. (212) 969-3000
    Fax (212) 969-2900
    hganz@proskauer.com
    nabramson@proskauer.com
    alupion@proskauer.com
    sfriedfel@proskauer.com

    *Attorneys for Petitioner*