UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE OFFICE OF THE COMMISSIONER OF BASEBALL, | 13 Civ. 7990 (ER) |
| Petitioner, | ECF |
| -against- | |
| MICHAEL S. SITRICK | |
| Respondent. | |

**MEMORANDUM OF LAW IN OPPOSITION TO ORDER TO SHOW CAUSE
TO COMPEL COMPLIANCE WITH SUBPOENA**

McKOOL SMITH, P.C.
Gayle R. Klein
John Briody
Sachin Bansal

One Bryant Park, 47th Floor
New York, New York 10036
(212) 402-9400

*Counsel for the Respondent.*

## TABLE OF CONTENTS

Table Of Authorities ............................................................................................................... ii

Preliminary Statement ............................................................................................................. 1

Statement Of Facts .................................................................................................................. 2

Argument ................................................................................................................................. 7

    I.       The Subpoena Was Not Properly Served .................................................................. 7

    II.      The Court Does Not Have Personal Jurisdiction Over Mr. Sitrick. ....................................................................................................... 11

              A. Personal Jurisdiction Does Not Exist Under State Law ................................. 12

              B. Compelling Mr. Sitrick to Testify In New York Violates Due Process....……14

    III.     Mr. Sitrick Does Not Have The Information The Commissioner Seeks And, Even If He Did, It Would Be Subject To Privilege ................................................................................................ 16

    IV.     The Subpoena Seeks Irrelevant Information And Is Overbroad. ......................................................................................................... 18

Conclusion ............................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Black v. USA Travel Auth., Inc.*,
No. 99 Civ. 11278, 2001 U.S. Dist. LEXIS 9297 (S.D.N.Y. July 6, 2001)............................13

*Boatswain v. Boatswain*,
3 Misc. 3d 803 (N.Y. Sup. Ct. 2004) ....................................................................................10

*Campinas Found. v. Simoni*,
No. 02 CIV 3965, 2004 U.S. Dist. LEXIS 1637 (S.D.N.Y. Feb. 6, 2004) .............................19

*Carroll v. Gammerman*,
193 A.D.2d 202 (N.Y. App. Div. 1st Dep't. 1993)................................................................10

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) ...........................................................................................18

*Coutts Bank (Switzerland) Ltd. v. Anatian*,
275 A.D. 609 (N.Y. App. Div. 1st Dep't. 2000)...........................................................10, 11

*DeLeonardis v. Subway Sandwich Shops, Inc.*,
1998 N.Y. Misc. Lexis 738 (N.Y. Sup. Ct. 1998) ................................................................10

*Dynegy Midstream Servs. LP v. Trammochem*,
451 F.3d 89 (2d Cir. 2006)...........................................................................................8, 11

*Essa Realty Corp. v. J. Thomas Realty Corp.*,
Index No. 105885/2009, 210 N.Y. Misc. Lexis 2789. (N.Y. Sup. Ct. June 23, 2010)...........10

*Glass v. Coughlin*,
No. 091 Civ. 0193, 1991 U.S. Dist. LEXIS 7278 (S.D.N.Y. May 29, 1991).........................10

*Helicopteros Nacionales De Colombia v. Hall*,
466 U.S. 408 (1984)........................................................................................................14

*In the Matter of Stephan*,
239 A.D.2f 963 (N.Y. Sup. Ct. 1977) ..................................................................................10

*In re Biovail Corp. Secs. Litig.*,
247 F.R.D. 72 (S.D.N.Y. 2007) .........................................................................................18

*In re Copper Market Antitrust Litigation*,
200 F.R.D. 213 (S.D.N.Y. 2001) ........................................................................................18

*In re Corso*,
328 B.R. 375 (E.D.N.Y. 2005) ...........................................................................................18

*In re: Grand Jury Subpoena Dated March 24, 2003 Directed to (A) Grand Jury Witness Firm and (B) Grand Jury Witness*,
    265 F. Supp. 2d 321 (S.D.N.Y. 2003).................................................................1, 18

*In re Parmalat Secur. Litig.*,
    376 F. Supp. 2d 449 (S.D.N.Y. 2005)...........................................................14

*Israel Discount Bank Ltd. v. P.S. Products Corp.*,
    65 Misc. 2d 1002 (N.Y. Sup. Ct. 1971) .....................................................9, 10

*Karabu Corp. v. Gitner*,
    16 F. Supp. 2d 319 (S.D.N.Y. 1998)..............................................................12

*Lamarr v. Klein*,
    35 A.D.2d 248 (N.Y. App. Div. 1st Dep't 1970).............................................13

*Merck & Co. v. Mediplan Health Consulting*,
    425 F. Supp. 2d 402 (S.D.N.Y. 2006).......................................................12, 13

*Metro Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996).............................................................................16

*Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*,
    484 U.S. 97 (1987)..........................................................................................11

*Peterson v. Spartan Industries, Inc.*,
    40 A.D. 2d 807 (N.Y. Sup. Ct. 1972) ...........................................................10

*Rosado v. A&P Food Store*,
    26 Misc. 3d 935 (N.Y. Sup. Ct. 2009) .............................................................9

*Siemens & Halske, GmbH v. Gres*,
    37 A.D.2d 768 (N.Y. Sup. Ct. 1971) .............................................................10

*Sunward Elecs., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004).............................................................................11

*United Paperworkers Int'l Union v. Misco, Inc.*,
    484 U.S. 29 (1987)............................................................................................8

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)........................................................................................14

## STATUTES

9 U.S.C. § 1 (Federal Arbitration Act)........................................................................8

29 U.S.C. § 1451 ........................................................................................................11

CPLR § 301.........................................................................................................12, 14

CPLR § 302.................................................................................................10, 12, 14

CPLR § 308........................................................................................................2, 9

CPLR § 2303....................................................................................................9, 10

Fed. R. Civ. P. 26.................................................................................................18

Fed. R. Civ. P. 45..........................................................................2, 7, 8, 16, 19

New York Judiciary Law § 2-b................................................................2, 9, 10, 11

**OTHER AUTHORITIES**

Black's Law Dictionary, 6th Ed...........................................................................10

Respondent Michael S. Sitrick, an individual, hereby files his opposition to the Order to Show Cause, issued by this Court on November 12, 2013, to compel compliance with Petitioner's trial subpoena, dated September 19, 2013 (the "Subpoena") issued on behalf of the Office of the Commissioner of Baseball (the "Commissioner") in connection with the ongoing New York arbitration between the Major League Baseball Players Association (Alex Rodriguez) and Major League Baseball ("MLB"), Grievance No. 2013-02 (the "Arbitration").

## PRELIMINARY STATEMENT

The Commissioner has sought to strip Mr. Sitrick of his due process rights under the law by pressuring him to comply with an invalidly served subpoena. The applicable rules and due process provide that Mr. Sitrick, an individual, cannot be compelled to fly more than 2,400 miles to testify in a legal proceeding to which he is not a party unless he has been personally served with process in the State of New York. It is undisputed that Mr. Sitrick never has been personally served with the Subpoena, nor has the Commissioner ever attempted to do so. Accordingly, enforcement of the Subpoena would be wrong as a matter of law and offend traditional notions of fair play and substantial justice.

The Commissioner has already claimed that any proceedings ancillary to the Arbitration belong in federal court. Indeed, *less than one week ago*, the Commissioner represented to this Court that Section 301 of the Labor Management Relations Act (the "LMRA") "complete[ly] preempts" any state action. Given its prior representations, the Commissioner cannot now argue that federal procedural rules – including the requirement that subpoenas to individuals be personally served within the State – do not set forth the relevant criteria for service of the Subpoena. Following those Rules, there can be no dispute that the Subpoena was not validly served. By now arguing for the application of New York state procedural rules, the

Commissioner seeks to circumvent the framework that it already has represented to this Court applies to the Arbitration.  The Commissioner should not be allowed to cherry-pick between state and federal laws and procedures per its whims, particularly when it does so in an attempt to deny an individual his due process rights.  Federal Rule of Civil Procedure 45 applies, and the Subpoena has not been properly served.

Even assuming that state law service rules applied, Mr. Sitrick was still not properly served.  Service could not have been properly effectuated under New York Civil Practice Law and Rule § 308(2) because Mr. Sitrick is not found within the state, as is required under New York Judiciary Law § 2-b.  And, in any event, Mr. Sitrick does not have sufficient contacts with the State of New York that would confer personal jurisdiction over him.  Accordingly, the Court should refuse to enforce the Subpoena.  Alternatively, at a minimum, Mr. Sitrick requests the Court modify the Subpoena based upon his timely-served objections thereto.  Among other things, the Subpoena seeks irrelevant and overbroad information that amounts to nothing more than a fishing expedition.  Also, given that Mr. Sitrick and his firm were retained specifically to facilitate legal advice being given, the information sought is subject to privilege and work product protection.

## STATEMENT OF FACTS

1.      Mr. Sitrick is a resident of California whose residence is in Pacific Palisades, California.  (Declaration of Michael S. Sitrick, dated November 15, 2013, hereinafter the "Sitrick Decl.," at ¶ 1).  He is the Chairman and Chief Executive Officer of Sitrick And Company, a public relations firm with its principal place of business at 11999 San Vicente Blvd., Penthouse, in Los Angeles, California, 90049.  (Id. at ¶ 2.)

2.      Although Mr. Sitrick previously was an owner of the firm, approximately four years ago, Resources Connection, Inc., which is based in Irvine, California, acquired 100% of Sitrick And Company.  (*Id.* at ¶ 3.)  Since that time, Mr. Sitrick has been an employee of the company.  (*Id.*)  Sitrick And Company has offices in New York, San Francisco, Chicago and the Baltimore/Washington area, which requires Mr. Sitrick, as the CEO, to travel to these places from time-to-time for business.  (*Id.* at ¶ 4.)  However, Mr. Sitrick spends the majority of his time in Los Angeles.  *(Id.)*

3.      Without any prior attempt to serve him personally, on September 19, 2013, the Commissioner dropped off the Subpoena at Sitrick And Company's New York office.  The Subpoena was issued by the Arbitration Panel in Grievance No. 2013-02 and was not issued pursuant to any particular law.  (*See* Notice of Removal (ECF Docket #1), Exh. 3 (Affidavit of Howard L. Ganz, hereinafter the "Ganz Aff."), at Ganz Aff. Exhibit 1.)  The Subpoena was directed to Mr. Sitrick in his personal capacity and sought for him, as an individual, to testify and give evidence, as well as bring documents, to the Arbitration proceeding in New York eleven days later.  (*Id.*)  Mr. Sitrick is not a party to the Arbitration.  (Sitrick Decl. at ¶ 5.)

4.      On September 19, 2013, Mr. Sitrick was not in the State of New York.  In fact, on that date, he was in Los Angeles, California.  (*Id.* at ¶ 6.)  Moreover, Mr. Sitrick had no plans to be in the State of New York between September 19, 2013 and September 30, 2013, the date on which his testimony was sought.  (*Id.*)  Thus, his non-presence in the State of New York was neither an attempt to evade service nor to avoid providing testimony.  (*Id.*)  Indeed, Mr. Sitrick had no knowledge that the Commissioner sought his testimony prior to the Subpoena being dropped off at the Sitrick And Company's New York office.  (*Id.*)

5.      On September 27, 2013, Mr. Sitrick served the Commissioner with objections to the Subpoena on both procedural and substantive grounds.  (Ganz Aff. at Ganz Aff. Exhibit 7.) The objections stated therein, included, without limitation, that the Commissioner failed to comply with the service and notice requirements for a non-party trial subpoena, as well as other objections, such as the fact that the Subpoena sought privileged information that is protected from disclosure and it was overly broad, burdensome and sought irrelevant information, *i.e.* information relating to ***any*** current or former professional baseball player.  (*Id.*)  Accordingly, Mr. Sitrick declined to appear at the Arbitration.  (*Id.*)  Mr. Sitrick incorporates his objections and asserts each and every one of as if set forth at length herein.

6.      The Commissioner never responded to Mr. Sitrick's objections.  In fact, the date that Mr. Sitrick's testimony was sought passed without the Commissioner contacting him further. (Sitrick Decl. at ¶ 7.)  Mr. Sitrick heard nothing further regarding the Commissioner's request for his testimony until October 29, 2013, w hen the media contacted him for comment on t he Commissioner's filing of this action.  (*Id.* at ¶¶  7-8.)  Indeed, despite the Commissioner's assertion, neither Mr. Sitrick nor his counsel received a copy of the certification attached as Exhibit 6 to Mr. Ganz's Affidavit prior to October 29, 2013.  (*Id.* at ¶ 8.)[1]

7.      The law firm of Black, Srebnick, Kirnspan & Stumpf (the "Attorneys") hired Sitrick And Company on January 25, 2013 to perform services that specifically were intended to facilitate legal advice being given to Mr. Rodriguez and provided by his Attorneys.  (*Id.* at ¶ 9.) At the time the Attorneys hired Sitrick And Company, Mr. Sitrick was in Los Angeles and the Attorneys were in Miami, Florida.  Mr. Sitrick never had any meetings or telephone calls with either Mr. Rodriguez or the Attorneys in New York.  (*Id.*)  Moreover, on all of the dates that the

---

[1]  The Commissioner's counsel has conceded that he is unaware of whether the certification was actually sent to Mr. Sitrick or his counsel.

Commissioner contends make Mr. Sitrick an "important" witness -- January 29, February 5, and August 16, 2013 -- Mr. Sitrick was not in New York.  (*See* Notice of Removal (ECF Docket #1), Exh. 1 (hereinafter, the "Verified Petition") at ¶¶ 15-17; Sitrick Decl. at ¶ 10.)

8.     Mr. Sitrick, in fact, is not an important witness to the Arbitration and he has very little to offer.  The Commissioner contends Mr. Sitrick's testimony is relevant based upon the fact that "Sitrick & [sic] Company issued a statement on behalf of Rodriguez" on or about January 29, 2013.  (Verified Petition at ¶ 15.)  Although Mr. Sitrick's name was listed as a point of contact on the media statement along with another Sitrick And Company employee, he was not a main point of contact, and he was not quoted as making further statements on Mr. Rodriguez's behalf.    (Sitrick Decl. at ¶ 11.)  The Commissioner recognizes that Mr. Sitrick did not personally issue this statement because he did not attribute it to Mr. Sitrick (*see* Verified Petition at ¶ 15).

9.     The Commissioner seeks documents that Mr. Sitrick allegedly provided to *Yahoo! Sports* on Mr. Rodriguez's behalf.  (Verified Petition at ¶¶ 16-17.)  Mr. Sitrick has never spoken with or otherwise provided information to anyone employed by or otherwise affiliated with *Yahoo! Sports* regarding Mr. Rodriguez.  (Sitrick Decl. at ¶ 12.)  Moreover, Mr. Sitrick has never seen the documents described in paragraphs 16 through 18 of the Verified Petition (other than the fact that Mr. Sitrick has read the *Yahoo! Sports* article referenced in paragraphs 16 and 17 of the Verified Petition).  (*Id.*)

10.     The Commissioner also seeks to obtain all documents and communications exchanged between Mr. Sitrick and Mr. Rodriguez or anyone acting on his behalf.  (*See* Ganz Aff. at Exh. 1.)  However, as noted above, Mr. Sitrick was hired by the Attorneys to facilitate legal advice to Mr. Rodriguez.  Therefore, as more particularly described above, all

communications Mr. Sitrick had with Mr. Rodriguez were subject to the attorney-client privilege, confidential, and are accordingly protected from disclosure.  (Sitrick Decl. at ¶ 13.)

11.     Although Mr. Sitrick does travel to New York to Sitrick And Company's offices from time-to-time as CEO of his employer to meet with clients or members of the media, he does not travel to New York with any particular continuity or regularity.  (Sitrick Decl. at ¶ 14.)  Mr. Sitrick's employer does not require Mr. Sitrick to spend a particular amount of time in New York.  (*Id*.)  Moreover, Mr. Sitrick also does not maintain any bank accounts in New York, does not visit New York enough so as to be required to file income or other tax returns as a New York resident, and he does not derive any income from any activities in New York, other than when he occasionally travels to New York for business on behalf of Sitrick And Company.  (*Id.* at ¶ 15.) Mr. Sitrick does not conduct any business within the State in his personal capacity.  (*Id*.) And, as mentioned above, Mr. Sitrick never traveled to the State of New York for the purpose of performing any work on behalf of or relating to Mr. Rodriguez.  (*Id*.)

12.     Despite the fact that Mr. Sitrick believes that the Subpoena is invalid for a variety of reasons, he nonetheless has offered not to oppose any request by the Commissioner for a commission to take his deposition in California near his place of residence.  However, Mr. Sitrick understands that the  Commissioner still seeks to require him, a non-party who lives and is presently 2,400 miles from the State of New York, to attend an Arbitration proceeding in New York.  Indeed, Mr. Sitrick has no plans to be in New York prior to the expected close of evidence in the Arbitration on November 26, 2013.  (*Id.* at ¶ 16.)

13.     By this Opposition, Mr. Sitrick opposes the Commissioner's effort to compel attendance in New York.  However, as Mr. Sitrick previously has informed the Commissioner, in the event Mr. Sitrick is served in California with a valid California subpoena issued pursuant to

an authorized out-of-state commission, Mr. Sitrick will appear for deposition in California to provide non-privileged testimony.

## ARGUMENT

**I.    THE SUBPOENA WAS NOT PROPERLY SERVED.**

The Subpoena does not state that it was issued pursuant to any authority granted to the Arbitration Panel under any New York state rules, nor does the Subpoena indicate that its service was authorized by any particular method.  (*See* Ganz Aff. at Exh. 1.)  The application of federal law is not only appropriate given the procedural posture of the Commissioner's application to enforce the Subpoena, it is also appropriate under substantive law.  The Arbitration is proceeding pursuant to Section 301 of the Labor Management Relations Act (the "LMRA") and is, therefore, governed by federal law.  Indeed, in defending its October 7, 2013, removal of a state court action by Mr. Rodriguez to this Court , the Commissioner represented on November 8, 2013, that any claims related to the Arbitration belong before this Court and are completely governed by the LMRA.  Specifically, the Commissioner stated:

> Section 301 ***completely preempts*** both of [Mr. Rodriguez's] claims because, as pled, they are inextricably intertwined with – indeed, utterly dependent upon – interpretation of the Basic Agreement and the Joint Drug Agreement . . . Once preempted, Plaintiff's claims are subject to federal common law under Section 301.

The Commissioner's Memorandum of Law in Support of Motion to Dismiss, 13-CV-7097, Dkt. No. 26 at pp. 2-3 (filed November 8, 2013) (emphasis added).

Following  the Commissioner's own assertions that any matters related to the Arbitration belong in this Court and federal law completely preempts issues in the Arbitration, Federal Rule of Civil Procedure 45 should apply to the subpoenas issued pursuant thereto.  B ecause Mr. Sitrick was not personally served within 100 m iles of the place specified for the hearing or

otherwise within the State of New York, the Subpoena was not properly served and should not be enforced.  *See* Fed. R. Civ. P. 45(b)(2).

This result is supported by the tenets of law surrounding the Federal Arbitration Act (the "FAA").  Although the Arbitration is not explicitly governed by the FAA, "federal courts have often looked to the Federal Arbitration [Act] for guidance in labor arbitration cases."  *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 40 n. 9 (1987).  FAA Section 7 states that an arbitrator's summons "shall be served in the same manner as subpoenas to appear and testify before the court."  9 U.S.C. § 7. Service of subpoenas to appear before the federal courts and enforcement of those subpoenas are in turn governed by Federal Rule of Civil Procedure 45.

Nationwide service of process is not permissible for a trial subpoena to a non-party in a labor arbitration.  Neither Fed. R. Civ. P. 45 nor the FAA permit a non-party to be served extraterritorially.  *See Dynegy Midstream Servs. LP v. Trammochem*, 451 F.3d 89, 94 ( 2d Cir. 2006) (finding the FAA did not authorize nationwide service of process).  A statute authorizes nationwide service of process only when it uses language permitting service "wherever the defendant may be found" or "anywhere in the United States".  *Id.* at 95.  Because the FAA does not authorize nationwide service, and because the courts look to the FAA for guidance in determining issues relating to arbitrations under the LMRA, service on Mr. Sitrick must have been effectuated personally on him within the State of New York.  Because it was not, service is ineffective and the Court is without jurisdiction to enforce the Subpoena.

Although Fed. R. Civ. P 45(b)(2) governs, the result is the same even if, as the Commissioner contends, New York state law applies.  Although a subpoena may generally be served by the same method as a summons, the New York state statute governing the service of a trial subpoena specifically precludes a subpoena being served on a person who is outside of the

8

state.  Section 2-b of the New York Judiciary Law is clear:  a trial subpoena may be issued only to a person who is "found in the state."  ("A court of record has power 1. to issue a subpoena *requiring the attendance of a person found in the state* to testify in a cause pending in that court, subject, however to the limitations prescribed by law with respect to the portion of the state in which the process of the local court of record may be served…") (emphasis added).  Although the New York Civil Practice Law and Rules provide that a trial subpoena may be served upon a person via alternative methods prescribed in CPLR § 308, such service is ineffective if that person is not, in fact, "found within the State" when the subpoena is served.  Thus, a trial subpoena can only reach a person who is within the State's borders.

This rule of law has been explicitly confirmed by New York state courts.  *See Rosado v. A&P Food Store*, 26 Misc. 3d 935, 940 -941 (N.Y. Sup. Ct. 2009) (finding the court "does not have authority to direct an out-of-state witness to appear to testify at trial" and stating that Judiciary Law § 2-b "does not grant the court the power to direct a person who is out of state to appear to testify.").  In *Israel Discount Bank Ltd. v. P.S. Products Corp.*, 65 Misc. 2d 1002, 1003 (N.Y. Sup. Ct. 1971), the court explained that the enactment of CPLR § 2303, which provides that a subpoena may be served in the same manner as a summons, does not authorize the service of a subpoena on someone who is without the State, even though under the long arm statute a summons could so be served.  Rather, although it is:

> True, as pointed out [by the movant], the CPLR, in 302(subd. [a]) greatly expanded the jurisdiction of our courts over nonresidents… True, also that CPLR 2303 provides that a subpoena shall be served in the same manner as a summons.  However, the Legislature by these aforementioned simultaneous enactments did not intend to confer upon our courts "long arm" jurisdiction in the subpoena power.  Had the Legislature chosen to do so, it would have done so by a clear enactment.

9

*Id.* (citations omitted); *Glass v. Coughlin*, No. 091 Civ. 0193, 1991 U.S. Dist. LEXIS 7278, at

*9-10 (S.D.N.Y. May 29, 1991) (under CPLR § 2303 " courts in the Southern District may

compel the attendance of any witness *who resides within the state . . .*") (emphasis added).  Thus,

time and time again following the *Israel Bank* decision, New York courts have refused to enforce

trial subpoenas on non-New York residents:

> A New York subpoena may not be served outside the state without
> a commission or letters rogatory, obtained pursuant to CPLR
> § 3108 upon a pplication to the court, as a device to secure
> disclosure.  E ven in situations in which, by analogy to summons
> service, authority might be spelled out for the service of a
> subpoena outside New York, the language used in § 2-b of the
> Judiciary Law, which speaks of subpoenas directed to "persons
> found in the state" has been applied to preclude extrastate service
> of a subpoena.  This is a needlessly restrictive interpretation, but as
> long as it stands, **a New York subpoena may not reach beyond**
> **New York borders whatever the bases or justifications may be**
> **in the particular situation.**

*Essa Realty Corp. v. J. Thomas Realty Corp.*, Index No. 105885/2009, 210 N.Y. Misc. Lexis

2789, at *7 (N.Y. Sup. Ct. June 23, 2010) (citations omitted) (emphasis added).[2]

Although one court has noted that the New York legislature has not specifically defined

"found in the state" for purposes of § 2-b, the verbiage "found in the state" for service of process

commonly means physically present.[3]   Black's Law Dictionary, 6th Ed. ("Found.  A person is

---

[2] *See also, e.g.*, *Carroll v. Gammerman*, 193 A.D.2d 202 (N.Y. App. 1st Dep't. 1993) (court could not compel a
non-resident to testify at trial); *DeLeonardis v. Subway Sandwich Shops, Inc.*, 1998 N.Y. Misc. Lexis 738 (N.Y. Sup.
Ct. March 30, 1998) (rejecting the notion that, even though the court has "long arm" jurisdiction of a nonresident
under CPLR 302, it cannot compel the testimony of a witness who does not reside in the state); *Boatswain v.
Boatswain*, 3 M isc. 3d 803, 805 (N.Y. Sup. Ct. 2004) ("There is no authority for the service of a subpoena on a
nonparty witness who is a nonresident of New York State"); *Siemens & Halske, GmbH v. Gres*, 37 A.D.2d 768
(N.Y. Sup. Ct. 1971) (quashing a subpoena seeking to require testimony of a resident and domiciliary of New
Jersey), *In the Matter of Stephan*, 239 A.D.2f 963 (N.Y. Sup. Ct. 1977) (vacating a subpoena purporting to require
an Ohio resident to appear at a hearing Rochester); *Peterson v. Spartan Industries, Inc.*, 40 A.D. 2d 807, 807-08
(N.Y. Sup. Ct. 1972) ("The court's power to issue a subpoena is governed by section 2-b of the Judiciary Law which
requires that the party served be 'found in the state'.  Thus, this out-of-State service of the subpoenas on a
nonresident was unauthorized and void.").

[3] *See Coutts Bank (Switzerland) Ltd. v. Anatian*, 275 A.D. 609, (N.Y. App. Div. 1st Dep't. 2000).  *Coutts* is
distinguishable in that it was a u nique set of circumstances where a j udgment-debtor, over whom the court had

said to be 'found' within a state for purposes of service of process when actually present therein.")

Moreover, had the New York legislature intended "found in the state" to mean anything but physically present, it likely would have so provided. *See, e.g.*, *Dynegy*, 451 F.3d at 94-95 (finding that a legislature knows how to authorize service beyond persons who are present within a particular state and failure to do so "argues forcefully that such authorization was not its intention."). Indeed, laws exist that permit service anywhere "the defendant resides, does business, or may be found." *See Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104-105 (1987); 29 U.S.C. § 1451(d). Thus, doing business in a state and being found in a state are different. Judiciary Law § 2-b is explicit that service is proper only when the person is found in New York, and accordingly because Mr. Sitrick was not served while he was in the state, service is still improper under New York law assuming *arguendo* that it applied.

## II.   THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER MR. SITRICK.

Even if service of the subpoena had been proper on Mr. Sitrick, which it was not, the Court is still without the ability to compel him to attend the Arbitration because the Court lacks personal jurisdiction over Mr. Sitrick. The Second Circuit has held that, "In a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for national service of process." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (citing *PDK Labs., Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997)). When undertaking an analysis of personal jurisdiction, the Court must first determine whether personal jurisdiction over Mr.

personal jurisdiction, left the United States to evade satisfaction of an impending judgment. Here, there is no personal jurisdiction over Mr. Sitrick and he is not seeking to evade service. As such, *Coutts* does not apply.

Sitrick is established under New York law as the forum state, and then determine "whether the exercise of jurisdiction under state law satisfies federal due process requirements." *Merck & Co. v. Mediplan Health Consulting*, 425 F. Supp. 2d 402, 419 (S.D.N.Y. 2006).   Because neither prong of this test is satisfied, the Court does not have jurisdiction to compel Mr. Sitrick to testify in New York.  However, as noted above, should the Commissioner obtain a valid commission for a deposition, Mr. Sitrick is willing to sit for a deposition within his home state of California.

### A.  Personal Jurisdiction Does Not Exist Under State Law.

The Court is without personal jurisdiction over Mr. Sitrick under New York law. Accordingly, it cannot compel Mr. Sitrick to testify at the Arbitration.  Under New York law, personal jurisdiction may be established under either CPLR 301 or CPLR 302. Under CPLR 301, "personal jurisdiction is proper if the defendant is 'doing business' in New York so as to establish a presence in the State.  The defendant must be doing business not occasionally or casually, but with a fair measure of permanence and continuity." *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 322 (S.D.N.Y. 1998) (internal citation and quotation omitted).  If a person is not doing business with a fair measure of permanence and continuity, CPLR 302 permits personal jurisdiction over a non-domiciliary where the moving party's claims at issue relate directly to the non-domiciliary's business conduct in the state.  Mr. Sitrick's contacts with New York do not satisfy either standard for personal jurisdiction, and thus Mr. Sitrick is not subject to jurisdiction in New York.

Although the Verified Petition claims that New York is Mr. Sitrick's place of business, Verified Petition at ¶ 3, Mr. Sitrick's Declaration establishes that he conducts business in New York only on occasion and solely on behalf of his employer.  This is insufficient to establish personal jurisdiction over Mr. Sitrick.  To establish general jurisdiction, the Commissioner must

12

show that Mr. Sitrick conducts some sort of business in New York in his ***personal capacity***, which he does not.  *Black v. USA Travel Auth., Inc.*, No. 99 Civ. 11278, 2001 U.S. Dist. LEXIS 9297, at *4 (S.D.N.Y. July 6, 2001) ("It is well-settled that where a corporation is doing business in New York, an officer of the corporation does not subject himself individually to 301 jurisdiction unless he is doing business in New York personally.")  Indeed, the Commissioner does not allege that Mr. Sitrick does business in his personal capacity, but only on behalf of Sitrick And Company, his employer.  Thus, the Commissioner's conclusory allegation that Mr. Sitrick's place of business is New York fails to establish personal jurisdiction, particularly in light of Mr. Sitrick's declaration. *See Lamarr v. Klein*, 35 A.D.2d 248, 250 (N.Y. App. Div. 1st Dep't 1970) ("[C]onclusory allegations . . . must fail in the face of the positive assertions found in the affidavit of the defendant.").

Moreover, the declaration further proves that the Commissioner's claims at issue do not arise out of or relate to Mr. Sitrick's limited business activity in New York.  Mr. Sitrick was in Los Angeles when he was engaged by Mr. Rodriguez's attorneys, who at the time were in Miami, Florida.  Mr. Sitrick never had any meetings or telephone calls with either Mr. Rodriguez or his attorneys while he was in New York.  (Sitrick Decl. at ¶ 9.)  And on all of the dates that the Commissioner contends make Mr. Sitrick an "important" witness -- January 29, February 5, and August 16, 2013  -- Mr. Sitrick was not in New York.  (*See* Verified Petition ¶¶ 15-17; Sitrick Decl. at ¶ 10.)  And Mr. Sitrick never traveled to New York on behalf of or in connection with his work for Mr. Rodriguez.  (Sitrick Decl. at ¶ 15.)   Thus, the Court does not have jurisdiction over Mr. Sitrick because none of the alleged relevant conduct occurred in New York. *See Merck*, 425 F. Supp. 2d at 419-420 (declining to find personal jurisdiction as it relates to business conduct where no *prima facie* showing based upon the individual's contacts with New

York).  Accordingly, even if the Subpoena had been properly served, the Court cannot exercise

jurisdiction over him and compel Mr. Sitrick's attendance in New York.

**B.  Compelling Mr. Sitrick To Testify In New York Violates Due Process.**

Compelling Mr. Sitrick to testify in the New York Arbitration also would offend

traditional notions of fair play and substantial justice.[4]  In order to exercise personal jurisdiction,

the relationship between an individual and the forum state must be such that it is "reasonable" to

require that individual to be brought there.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

286, 292 (1980).  As is described below, it is simply not reasonable to require Mr. Sitrick to

attend the Arbitration.

Determining whether the exercise of personal jurisdiction would be "reasonable" requires

an analysis of the following five factors: (1) the burden that the exercise of jurisdiction will

impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the

movant's interest in obtaining convenient and effective relief; (4) the interstate judicial system's

interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest

of the states in furthering substantive social policies.  *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d

449, 457 (S.D.N.Y. 2005).  Weighed individually, each of these factors supports the dismissal of

this action, but when combined, it provides an even more compelling basis for dismissal.

---

[4] When undergoing an analysis of due process, after having reviewed personal jurisdiction under a state's laws, a federal court then proceeds with its own analysis of the court's power to assert personal jurisdiction over a non-resident under the due process clause of the Fourteenth Amendment.  *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 413-414 (1984).  That review begins with whether an individual  has "minimum contacts" with a forum state for purposes of conferring either specific or general jurisdiction.  *Hall*, 466 U.S. at 414-416.  "Specific" jurisdiction is established when the individual's contacts with the forum state give rise to the claims at issue.  *Id.* "General" jurisdiction arises when the individual's conduct is so "substantial" and "continuous and systematic" with the forum state.  *Id.*  Given that there is no personal jurisdiction over Mr. Sitrick under New York law, and because the due process analysis for general and specific jurisdiction is largely the same pursuant to CPLR 301 (general jurisdiction) and CPLR 302 (specific jurisdiction), there is no need to repeat such analysis here.  As there is no personal jurisdiction, due process is not satisfied.  Nonetheless, the analysis in this section further proves exercising jurisdiction over Mr. Sitrick is improper because it also does not satisfy the additional requirement under federal common law that exercising jurisdiction must also be "reasonable."  *In re Parmalat Secur. Litig.*, 376 F. Supp. 2d 449, 457 (S.D.N.Y. 2005).

First, compelling Mr. Sitrick to fly to New York, particularly on short notice, would be unduly burdensome. He is a resident of California, has a full schedule of meetings that require him to be in various cities other than New York throughout the month of November, and he currently has no plans to return to New York prior to the expected close of evidence in the Arbitration on November 26, 2013. (Sitrick Decl. at ¶ 16.) Any work that Mr. Sitrick performed on the engagement for the Attorneys was not in New York, so Mr. Sitrick had no reason to believe he would receive a subpoena compelling him to testify or otherwise show up in New York. Thus, to require him to travel more than 2,400 miles under the circumstances is overly burdensome and unfair.

Second, New York does not have an interest in exercising jurisdiction over Mr. Sitrick personally. The Commissioner's purported needs for Mr. Sitrick's testimony and document production at the Arbitration is entirely based on general and conclusory allegations. His participation in the Arbitration will do little, if anything, to determine the merits of Mr. Rodriguez's grievance with the Commissioner. The true parties in interest here, Mr. Rodriguez and the Commissioner, will still be able to capably and fully litigate the issues.

Third, the Commissioner still has convenient and effective relief without Mr. Sitrick. The Commissioner's allegations regarding information purportedly provided to *Yahoo! Sports* on Mr. Rodriguez's behalf is improperly directed at Mr. Sitrick because he has never seen the alleged document (other than in the news report itself). (Sitrick Decl. at ¶ 12.) No specific allegations are made regarding Mr. Sitrick's participation or knowledge of these documents. No reason exists to believe that exercising jurisdiction over Mr. Sitrick is necessary to provide the Commissioner with convenient and effective relief, and the Commissioner has advanced none.

15

Fourth, the interstate judicial system retains its interest in obtaining the most efficient resolution of the controversy. Refusing to enforce the Subpoena will not affect the interstate judicial system's interest in obtaining the most efficient resolution of the controversy. This element of the test looks to where witnesses and evidence are likely to be located. *Metro Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996) (citing *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995). The Arbitration has specific rules that govern who may or may not be called to testify. Refusal to enforce the Subpoena gives effect to those rules, as well as to Federal Rule of Civil Procedure 45. To the contrary, enforcing the Subpoena could result in a rash of subpoenas being issued to out-of-state witnesses for any number of minor reasons solely because their employers occasionally ask them to travel New York for work.

Finally, dismissing Mr. Sitrick will adhere to "traditional notions of fair play and substantial justice" required for constitutional jurisdiction. *Metro Life*, 84 F.3d at 568, as opposed to adversely affecting the states' shared interest in furthering substantive social policies. Mr. Sitrick does not have regular contact with New York and could not have expected to be subpoenaed there personally on a matter relating to Sitrick And Company's business.

## III. MR. SITRICK DOES NOT HAVE THE INFORMATION THE COMMISSIONER SEEKS AND, EVEN IF HE DID, IT WOULD BE SUBJECT TO PRIVILEGE.

The Commissioner contends that Mr. Sitrick's testimony is "***necessary*** to establish whether Mr. Rodriguez or his representatives have or had documents relevant to the Commissioner's allegations in the Arbitration in their possession and when those documents were obtained." (Verified Petition at ¶ 20.) It is unclear, however, why Mr. Sitrick's testimony is necessary to do this. But putting that matter aside, Mr. Sitrick's declaration demonstrates that he does not have, nor has he had any such information. Although Mr. Sitrick's name was listed

as a point of contact on the media statement along with another Sitrick And Company employee, he was not a main point of contact, and he was not quoted as making further statements on Mr. Rodriguez's behalf. (Verified Petition at ¶ 15; Sitrick Decl. at ¶ 11.) Nor did Mr. Sitrick provide any information to *Yahoo! Sports*, which is the communication about which the Commissioner claims to need to elicit testimony. (Verified Petition at ¶¶ 16-17; Sitrick Decl. at ¶ 12.) Finally, Mr. Sitrick has neither seen nor been in possession of the documents described in paragraphs 16 through 18 of the Verified Petition (other than the fact that Mr. Sitrick has read the article referenced in paragraphs 16 and 17 of the Verified Petition). (Sitrick Decl. at ¶ 12.) Thus, the very reasons the Commissioner alleges he needs Mr. Sitrick's testimony are without basis.

Additionally, even if Mr. Sitrick did have the information sought, any discovery would be subject to the attorney client privilege and the work product doctrine. Although the Commissioner represented to the Court that the Commissioner is seeking only communications between Mr. Sitrick and the press, the Subpoena belies that contention. The first category of documents the Subpoena seeks is "[a]ny and all documents or communications exchanged" between Mr. Sitrick and Alex Rodriguez "and/or persons or entities acting on his behalf (including but not limited to Black, Strebnick, Kornspan & Stumpf, P.A.) . . . from October 1, 2012 to the present *relating to any Players* . . ." Subpoena at 4 (emphasis added). The Subpoena broadly defines "Players" as "any and all professional baseball players who are employed by or playing for, or have in the past been employed by or played for, any of the 30 Major League Baseball Clubs."[5]

Mr. Rodriguez's lawyers hired Sitrick And Company on January 25, 2013 to perform services that were specifically intended to facilitate legal advice being given to Mr. Rodriguez

---

[5] The request is thus overly broad and should be rejected for the reasons set forth in Section IV, *infra*.

17

and provided by the Attorneys.    (Sitrick Decl. at ¶ 9.)    Accordingly, Mr. Sitrick's communications with Mr. Rodriguez and his counsel, limited though they are, cannot be discovered because they are protected by privilege.  *See In re: Grand Jury Subpoena Dated March 24, 2003 Directed to (A) Grand Jury Witness Firm and (B) Grand Jury Witness*, 265 F. Supp. 2d 321 (S.D.N.Y. 2003) (communications with public relations firm assisting law firm in providing legal advice are protected by the attorney-client privilege); *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213 (S.D.N.Y. 2001) (same). Moreover, given the sweeping nature of the request, it is no more than a fishing expedition that is not reasonably tailored to elicit information relating to the Commissioner's claims against Mr. Rodriguez.

## IV.    THE SUBPOENA SEEKS IRRELEVANT INFORMATION AND IS OVERBROAD.

The second category of documents requested in the Subpoena also is not discoverable because it is not relevant to a claim or defense of any party.  *See* Fed. R. Civ. P. 26(1); *In re Biovail Corp. Secs. Litig.*, 247 F.R.D. 72, 74 ( S.D.N.Y. 2007). Where, as here, discovery is sought from a third party, "the Court must weigh the probative value of the information against the burden of production on said non-parties." *Biovail*, 247 at 74.  A determination of whether such a burden is "undue" involves an analysis of factors including "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed." *Id.*  Indeed, "[t]o the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable." *Id.* at 75; *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50 (S.D.N.Y. 1996) (same); *see also In re Corso*, 328 B.R. 375, 383-384 (E.D.N.Y. 2005) (F.R.C.P. 45(c) provides a "level of protection" to subpoenaed persons as a "safeguard . . . to protect against an overbroad

subpoena.").  "Documents sought via subpoena must be relevant to the subject matter of the action; a subpoena which calls for the production of irrelevant material should not be enforced." *Campinas Found. v. Simoni*, No. 02 CIV 3965, 2004 U.S. Dist. LEXIS 1637, at *3 (S.D.N.Y. Feb. 6, 2004).

The Commissioner suggested during the November 12, 2013 hearing before this Court that he is only seeking through the Subpoena documents reflecting communications between Mr. Sitrick and the press.  This alone warrants denial of enforcement of the Subpoena because it demonstrates that the Subpoena, on its face, is overly broad.  Moreover, the representation underscores the Subpoena's lack of relevance to the Arbitration.  The Commissioner asserts that the information sought in the Subpoena is relevant to the "claims and defenses" in the Arbitration, *see, e.g.*, Verified Petition at 4,  but does not explain how it is relevant to its claims that Mr. Rodriguez was using performance enhancing drugs, or obstructed any investigation. Instead, the Subpoena is overbroad, irrelevant and a fishing expedition.

Indeed, the Subpoena seeks discovery concerning "communications exchanged between you and any representative of any media outlet… from October 1, 2012 to the present relating to [any person who ever played professional baseball]…."  Such a sweeping request that is not tailored in any way to Mr. Rodriguez, much less the allegations he used performance enhancing drugs, renders this request overly broad and unreasonable.  Mr. Sitrick represents many athletes and it is hard to understand how his communications with the press relating to any of his other clients (much less Mr. Rodriguez) are relevant.  The Commissioner should not be rewarded for his attempt to abuse the system and seek such information.  The Court, therefore, should refuse to enforce the Subpoena.

## **CONCLUSION**

For the foregoing reasons, Mr. Sitrick respectfully requests that this Court deny the

Commissioner's Motion and grant Mr. Sitrick such other relief, at law or in equity, to which he is

justly entitled.

Dated: New York, New York
           November 15, 2013

                                        MCKOOL SMITH, P.C.

                                        By: /s/ Gayle R. Klein____
                                        Gayle R. Klein
                                        John C. Briody
                                        Sachin S. Bansal
                                        One Bryant Park, 47th Floor
                                        New York, NY 10017
                                        (212) 402-9400
                                        gklein@mckoolsmith.com

                                        -and-

                                        MCKOOL SMITH, P.C.
                                        J. Michael Hennigan (*pro hac vice to follow*)
                                        Peter J. Most (*pro hac vice to follow*)
                                        865 South Figueroa St., Suite 2900
                                        Los Angeles, CA 90017
                                        (213) 694-1200
                                        hennigan@mckoolsmithhennigan.com
                                        pmost@mckoolsmithhennigan.com

                                        *Attorneys for Michael S. Sitrick*